# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Please see attachment.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JANE DOE 1 & JANE DOE 2, individuals

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco Superior Court

400 McAllister Street
San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):*

**CGC-16-551538**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Nancy Hersh, Hersh and Hersh, 601 Van Ness Ave., Suite 2080, San Francisco, CA 94102  415-441-5544

DATE: **APR 18 2016**    **CLERK OF THE COURT**    Clerk, by _____ Arlene Ramos , Deputy
*(Fecha)*                                          *(Secretario)*      ARLENE RAMOS         *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN FRANCISCO

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Doe v. Xytex Corporation, et al. | |

**ATTACHMENT** *(Number):* __One__

*(This Attachment may be used with any Judicial Council form.)*

Notice to Defendant:

XYTEX CORPORATION, a Georgia Corporation; XYTEX CRYO INTERNATIONAL LTD., a Georgia Corporation; MARY HARTLEY, an individual; J. TODD SPRADLIN, an individual; and DOES 1-25, inclusive

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page __1__ of __1__

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

1  NANCY HERSH, State Bar No. 49091
2  BRENDAN GANNON, State Bar No. 303410
   HERSH & HERSH
3  A Professional Corporation
   601 Van Ness Avenue, Suite 2080
4  San Francisco, CA 94102-6396
   (415) 441-5544
5  (415) 441-7586

6

7  Attorneys for Plaintiffs
   JANE DOE 1 & JANE DOE 2
8

9

**F I L E D**

Superior Court of California
County of San Francisco

APR 1 8 2016

CLERK OF THE COURT

BY: _Arlene Ramos_
Deputy Clerk

10          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11          **IN AND FOR THE COUNTY OF SAN FRANCISCO**

12                    **UNLIMITED**    **CGC-16-551538**

13

14
15  JANE DOE 1 & JANE DOE 2, individuals,    )    COMPLAINT FOR DAMAGES
                                             )    1.  Intentional Misrepresentation (Fraud)
16                   Plaintiffs,             )    2.  Negligent Misrepresentation
                                             )    3.  Products Liability – Strict Liability
17  vs.                                      )    4.  Products Liability – Negligence
                                             )    5.  Breach of Express Warranty
18  XYTEX CORPORATION, a Georgia             )    6.  Breach of Implied Warranty
    Corporation; XYTEX CRYO                  )    7.  Battery
19  INTERNATIONAL LTD., a Georgia            )    8.  Negligence
    Corporation; MARY HARTLEY, an            )    9.  Specific Performance
20  individual; J. TODD SPRADLIN, an         )    10. False Advertising
    individual; and DOES 1-25, inclusive,   )    11. Unfair Business Practices
21                                           )    12. Wrongful Birth
                                             )
22                                           )
                                             )    JURY TRIAL DEMANDED
23                   Defendants.             )
                                             )
24  _____ )

25

26

27

28

                                    1

─────────────────────────────────────────────────
          COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

## **COMPLAINT**

1.      Plaintiffs, JANE DOE 1 and JANE DOE 2, individually commence this action against Defendant Xytex Corporation ("Xytex" or "Xytex Corporation"), Defendant Xytex Cryo International LTD ("Xytex International"), Defendant Mary Hartley, an individual, Defendant J. Todd Spradlin, an individual, and Defendant Does 1 through 25.

## **PARTIES**

2.      Plaintiffs, JANE DOE 1 and JANE DOE 2 ("Plaintiffs") reside in San Francisco, California, and have one child, P.S., who was conceived as a result of their purchase of semen from Defendant Xytex Corporation.

3.      Defendant Xytex Corporation ("Xytex" or "Xytex Corporation") is a corporation with its principal place of business in Atlanta, Georgia.  The Xytex Corporation is a for-profit seller of human semen. Plaintiffs acquired human semen for artificial insemination, and at all times relevant herein, Plaintiffs were sold human semen by Defendant Xytex Corporation.

4.      Defendant Xytex Cryo International LTD ("Xytex International") is a corporation organized and existing under the laws of the state of Georgia.  Xytex International is a business that, at all times relevant, sold human semen to the Plaintiffs through its subsidiary, Defendant, Xytex Corporation.  The selling and promotion of such human semen included, but was not necessarily limited to, the testing, collection, promotion, advertising, marketing, sales and distribution of donor semen.  Additionally, Xytex International, through Defendant Xytex Corporation, supervised and coordinated the evaluation and selection of semen donors, the collection of which was advertised, marketed, sold, and promoted as a carefully curated group of extraordinarily smart, educated, and healthy persons.

2

5.      Defendant, Mary Hartley, and Does 1 through 10, are, and were at all times relevant herein, employees, agents, owners, and/or directors who worked at, or were associated with, the Atlanta Office of Defendants, Xytex Corporation and Xytex International.  Defendant Mary Hartley, and Does 1 through 10, also recruited Donor #9623 Aggeles, and promoted Donor #9623 Aggeles to Plaintiffs through various mediums, on various dates, in various ways.

6.      Defendant, J. Todd Spradlin, and Does 11 through 15, are, and were at all times relevant herein, employees, agents, owners, directors, and/or doctors, physicians, medical professionals, examiners, and assistants who were associated with, the Atlanta Office of Defendants, Xytex Corporation and Xytex International.

7.      Defendants, Does 16 through 20, are, and were at all times relevant herein, distributors of donor semen, and/or companies, entities, or corporations that assisted the Xytex Corporation, and Xytex International, in selling and distributing human semen to Plaintiffs for purposes of artificial insemination.

8.      Defendants, Does 21 through 25, are, and were at all times relevant herein, persons who assisted the Xytex Corporation, and Xytex International, in selling and distributing human semen to Plaintiffs for purposes of artificial insemination.

9.      Plaintiffs do not know the true names of the defendants sued herein as Does 1 through 25, inclusive.  Plaintiffs allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and caused injuries and damages to all Plaintiffs as set forth herein.

10.     All Defendants herein acted as the agent, servant and employee and/or in concert with each of the other said Defendants in doing the acts herein alleged.

3

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

# FACTUAL ALLEGATIONS

## I.    INTRODUCTION.

11.    The factual allegations section of this complaint will serve as a chronological presentation of the ways in which the Plaintiffs were injured and deceived by the Xytex Corporation. It will also seek to shed light on the despicable behavior of the Xytex Corporation. Xytex continues to act with callous disregard for the safety of those who are exposed to its products, and, in its unchecked and unregulated position, it will continue to disrupt and destroy innocent lives if it not held accountable for its conduct.

12.    In this case, the Xytex Corporation sold the Plaintiffs sperm from Xytex Donor #9623, James Christian Aggeles, a diagnosed schizophrenic, and a convicted felon. James Christian Aggeles completely fabricated his application to become a Xytex sperm donor, and the Xytex Corporation, and the other Defendants herein, actually assisted Mr. Aggeles in falsifying the information that was presented to the public as true.

13.    Since the very beginning, before James Christian Aggeles ever went to the Xytex office to fill out his Xytex sperm donor application on October 18, 2000, there were easily accessible, irrefutable, medical documents that proved that he had **already** been diagnosed by the medical professionals at Atlanta Regional Hospital, and the Northwest Georgia Regional Hospital, with Schizophrenia, Narcissistic Personality Disorder, a drug induced psychotic disorder, and significant grandiose delusions.

14.    Additionally, James Christian Aggeles did not have even one college degree when he applied to become a Xytex sperm donor on October 18, 2000, and he did not actually earn a college degree until 2015. Nevertheless, the profile for Donor #9623, during all times relevant herein, declared that James Christian Aggeles had a Bachelor's Degree, a Master's Degree, and that he was working towards his Ph.D. in artificial intelligence. The Xytex Corporation, and other Defendants, did absolutely nothing to investigate the educational claims

4

that James Christian Aggeles made when he applied to become a Xytex sperm donor. A simple phone call to the relevant universities would have sufficed, but the Xytex Corporation did nothing. Instead of investigating Mr. Aggeles' claims regarding his level of education, the Xytex Corporation decided to promote Donor #9623 as a highly educated person, with a 160 IQ – that was completely invented by the Xytex Corporation.

15.     Furthermore, the Xytex Corporation made no effort to investigate Mr. Aggeles' arrest and conviction history. Mr. Aggeles committed a residential burglary in 2005, which was **years before** any of the Plaintiffs in this case were sold his sperm by the Xytex Corporation. Mr. Aggeles spent 8 months in custody for that crime, and this information was all public record, easily accessible, and irrefutable. Nevertheless, the Xytex Corporation never made any effort to determine if it was selling the sperm of a convicted burglar to the unsuspecting persons that it had declared to protect, and fully inform. Instead of conducting an actual investigation into the claims made by James Christian Aggeles, Xytex promoted Donor #9623 as one of their best donors. Despite all of the evidence that was to the contrary, and publicly accessible, Xytex promoted James Christian Aggeles as a man of high integrity who was extremely intelligent, and incredibly educated.

16.     Despite all of this, the Xytex Corporation, and other Defendants, unceasingly promoted the sperm of Donor #9623, James Christian Aggeles, to such incredible extent that he now, by their own admission, is the biological father of at least 36 children. The mental illnesses that James Christian Aggeles suffers from are genetic, hereditary, and are passed from one generation to the next. Nevertheless, the Xytex Corporation has assumed no responsibility in that it has done absolutely nothing to warn affected parents that schizophrenia may develop in their children, and it has provided no help whatsoever to the parents who are now incurring extraordinary medical and financial expenses associated with the mental illnesses that are developing in their children. After this brief introduction, the factual allegations section will

5

now focus on what Xytex said it would do, what actually happened, and what Xytex has done since the truth about Donor #9623, James Christian Aggeles, was been fully exposed.

## II.   WHAT THE XYTEX CORPORATION SAID IT WOULD DO.

17.     Xytex International, through its subsidiary, the Xytex Corporation, sells human semen for the purposes of artificial insemination.  The Xytex Corporation's website declares that it is "an industry leader in reproductive services with a commitment to unsurpassed quality controls," and that the donors' personal health and family history are carefully screened through a comprehensive medical process developed by the U.S. Centers for Disease Control and Prevention.  Additionally, the website proclaims that the Corporation's "FDA-mandated screening and testing also ensures our donors' continued good health."  The screening process is so thorough that a mere "1 percent of the men that inquire about being a donor candidate are evaluated," and, ultimately, "[f]ewer than 5 percent of the candidates become donors."

18.     The message that the Xytex Corporation presents regarding donor screening is exceedingly clear - Xytex does everything it can to carefully scrutinize the medical and social history of its donors, because, as Xytex alleges, it wants its "clients to make the most informed decision possible when selecting a donor."  Xytex declares to us that it is "about people and creating families," and that it wants its purchasers "to receive the best possible match to a Xytex donor."  This is the way Xytex presents itself to the general public.

### A.     THE REPRESENTATIONS MADE BY XYTEX REGARDING EXAMINATION AND QUALIFICATION OF SPERM DONORS.

19.     The website for the Xytex Corporation makes the following assertions, upon which all Plaintiffs relied, regarding the examination, screening, and qualification of its sperm donors:

(a)     Less than 5% of applicants actually become Xytex sperm donors.

6

(b)     All applicants go through the same rigorous qualification procedure.

(c)     Applicants are subjected to a thorough initial evaluation, and they are subsequently required to submit to "periodic updates throughout the year."

(d)     Trained counselors subject all applicants to extensive interviews that are focused on the applicants' personality, behavior and health.

(e)     Applicants undergo a comprehensive physical exam for physical abnormalities and evidence of infectious diseases, and samples of applicants' semen, urine, and blood are collected for laboratory analysis.

(f)     The Xytex medical director reviews all of the medical information in a process that takes about two months to complete.

(g)     The process of qualifying a donor is very intense and arduous, generating a lot of medical, psychological, genetic and social information about donors and their families.

(h)     Xytex does more than meet its professional and ethical responsibilities, as the quality of its clinical services are validated by state and national governmental agencies.

(h)     All Xytex donors "are enrolled in or have graduated from some of the country's premier universities and medical schools."

(i)     When a donor is participating in the semen donation program, he must submit to repeated lab testing for infectious diseases.

(j)     Every six months, donors are subjected to a physical examination, and they are required to update their medical history.

(k)     If there is any change in a donor's status, the donor's profile is updated with the new information.

(l)     When Xytex "learns new information about a donor (either from the donor or from a recipient of his semen) that is deemed medically significant by the Medical Director, a notice is sent to the inseminating doctor and to any patient who used semen from the donor."

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

20.    These statements from Xytex, included as part of paragraph 23 above, constitute some of, but not all, of the representations upon which Plaintiffs relied in choosing to purchase sperm from the Xytex Corporation.

## III.    WHAT XYTEX ACTUALLY DID – THE RECRUITEMENT AND PROMOTION OF DONOR #9623, JAMES CHRISTIAN AGGELES.

21.    Prior to even considering selling his sperm to Xytex, James Christian Aggeles had been hospitalized, as an adult, for mental health reasons on at least two separate occasions. During these hospitalizations, which sometimes lasted for more than two weeks, the medical staff at Atlanta Regional Hospital and Northwest Georgia Regional Hospital diagnosed Mr. Aggeles with psychotic schizophrenia, Narcissistic Personality Disorder, and significant grandiose delusions.  He was prescribed anti-psychotics, including Zyprexa and Depakote.

22.    Subsequent to these mental health hospitalizations and diagnoses, on October 18, 2000, James Christian Aggeles went to the Xytex office in order to make money selling his sperm.  After dropping out of school, he saw it as a fairly easy way to generate income between waiting tables and working as a janitor.  On his first visit, Mr. Aggeles told Defendant Mary Hartley, a Xytex representative, that he thought his IQ was about 130, but Mary Hartley suggested to him that he was a genius with an IQ of about 160.  She also told him that more educated donors did well selling their sperm, and that Xytex was used to donors with higher education.  James Christian Aggeles filled out a questionnaire . . . and from there on out, and for all times relevant herein, the profile for Xytex sperm Donor #9623 showed that he had an IQ of 160, multiple college degrees, a clean mental health history, and no criminal background.  Again, for all times relevant herein, Xytex or any of its employees or agents could have conducted a simple internet Google search and discovered through publicly accessible, indisputable, medical and professional documents that James Christian Aggeles was a diagnosed Schizophrenic, and a convicted felon with no education.

8

23.    Mr. Aggeles, by his own admission, lied about his mental health history, and his education when he filled out the Xytex questionnaire, but he was never questioned by anyone at Xytex. He was encouraged to tell lies, and bolster his intelligence and education levels by Defendant Mary Hartley. The questionnaire was falsified, and a physician gave Mr. Aggeles a 10-minute physical examination, during which no physical or mental health history was discussed. Approximately 2 weeks later, James Christian Aggeles, now Donor #9623, was approved to be a Xytex sperm donor, and he started donating sperm immediately – even though the Xytex website claims that the Xytex "medical director reviews all of the medical information in a process that takes about two months to complete."

24.    When Mr. Aggeles was a Xytex sperm donor, he was hospitalized for mental health reasons and arrested on numerous occasions. Publicly accessible documents unquestionably proved, before any of the Plaintiffs in this case were sold sperm from Mr. Aggeles, that he had a series of arrests for burglary, trespassing, DUI, and disorderly conduct. Also, before any of the Plaintiffs in this case were sold sperm from Mr. Aggeles, he had been hospitalized several times for severe suicidal outbursts and psychotic episodes. In 2002, Mr. Aggeles was placed on full Social Security Disability for his mental illnesses, he was diagnosed as having schizophrenic symptoms, and **he was found to be disabled**. During this time, Mr. Aggeles was selling his sperm to the Xytex Corporation, and Xytex was promoting him as a healthy, intelligent, and highly educated donor.

25.    From the year 2000 to the year 2016, and throughout that period, the Xytex Corporation, and other Defendants, relentlessly sold and promoted the sperm of Donor #9623, James Christian Aggles. As mentioned above, Mr. Aggeles is the father of at least 36 children due to his sperm being sold by the Xytex Corporation. The sperm of Donor #9623 was successfully inseminating women, and it therefore sold well. The Xytex Corporation had a commercial motive to sell Mr. Aggeles' sperm, and it pursued that motive by promoting and selling the sperm of Donor #9623 irrespective of whether or not he was a suitable sperm donor.

9

In these promotions, the Xytex Corporation, and all of the other Defendants referenced in this complaint, declared in their websites and materials, and in the statements that they made directly to all Plaintiffs, that James Christian Aggeles had the following characteristics:

- He had a Bachelor's Degree.

- He had a Master's Degree.

- He was working towards attaining his Ph.D. in Neuroscience Engineering.

- He had an IQ of 160.

- He had an impressive health history.

- He was one of their most popular donors.

- He was so popular that his sperm was rarely available.

- His child and adult photographs were authentic.

26.      The defendants made these representations to the plaintiffs, and the plaintiffs reasonably relied on them to their detriment, even though the defendants, notwithstanding their proclamations regarding their "unsurpassed quality controls," did absolutely nothing to verify the validity of the representations they were making about Donor #9623.

27.      In fact, the truth about Donor #9623 was very different from what the defendants represented about him.  In a recent interview, Donor #9623 stated that:

- He first went to the Xytex office in late 2000 in order to make money selling his sperm.

- When he first visited the Xytex office, he filled out a basic Questionnaire, but he was not asked any follow-up questions or any questions intended to verify his answers, and he was in the Xytex office for a grand total of 30 minutes.

- He was never asked for his medical records.

- He was never asked to sign a release for his medical records.

- He was never asked about his mental health history.

- He never spoke to a psychologist or psychiatrist representing Xytex.

10

- He specifically lied about his mental health history on the Questionnaire – as he had actually been hospitalized for mental health reasons on two separate occasions, and had been prescribed anti-psychotics, including Zyprexa and Depakote.

- He was never asked about his criminal history.

- He was never asked to provide a driver's license, or any other proof of identification.

- He lied about his education. He said that he had a BS from the University of Georgia, even though he did not; he said that he had a Masters Degree from the University of Georgia, even though he did not; he said that he was enrolled in a Ph.D. program in Artificial Intelligence, even though he was not.

- He went to the Xytex office in Atlanta to sell his sperm, and his main point-of-contact, for almost 14 years, was Defendant Mary Hartley.

- He told Mary Hartley that he thought his IQ was 130, and Mary Hartley told him that he was probably a genius with an IQ of 160. Mary Hartley told him that intelligent donors, with high levels of education, did well selling their sperm.

- He was surprised that Xytex never asked him to validate his educational claims.

- He was approved to become a sperm donor after his very first visit to the Xytex office.

- In 2014, after a lawsuit was filed against the Xytex Corporation that concerned Xytex sperm Donor #9623, Mr. Aggeles provided Xytex with fake graduation certificates, and Xytex accepted the fake graduation certificates.

- To his knowledge, Xytex has never made any attempt to verify his educational history in any way.

- He has been diagnosed with schizophrenia.

- He is a convicted felon.

- He attained his first, and only, college degree in May of 2015. Before that, he did not have any college degrees.

11

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

28.      Notwithstanding these facts, the Xytex Corporation promoted Donor #9623 as a highly educated, and extremely intelligent and thoughtful man, with a perfect health history. All of the above information was readily available to the Defendants, and easily accessible to them, and yet they utterly failed to conduct any form of investigation into the claims made by Donor #9623. For example, a simple phone call to the University of Georgia would have proven that Donor #9623 completely lied about his education on the Questionnaire. A simple Google search would have revealed Mr. Aggeles arrest history, and the publicly accessible documents that then showed, as early as 2002, that Mr. Aggeles had been arrested and hospitalized for mental health reasons, and that he had been diagnosed with serious mental illnesses. In failing to conduct any investigation whatsoever, while simultaneously peddling the notion that their procedures for donor screening were rigorous and comprehensive, the Defendants acted with completely callous disregard for the safety of all Plaintiffs, and the children that were conceived as a result.

29.      The credentials for Donor #9623, James Christian Aggeles, were completely falsified and incorrect, but Xytex, and other Defendants here, such as Mary Hartley and James Spradlin, also promoted him by telling Plaintiffs that Donor #9623 was one the most popular donors in the Xytex sperm donor panel, and they told Plaintiffs that Donor #9623 was so popular that his sperm was rarely available. The facts pertaining to each of the Plaintiffs are represented below.

## IV.    JANE DOE 1 & JANE DOE 2.

30.      Jane Doe 1 and Jane Doe 2 are a same-sex couple residing in San Francisco, California, who pursued the route of artificial insemination. Jane Doe 1 and Jane Doe 2 heard about the Xytex Corporation through some friends in San Francisco, and they started doing some research online, and came across the Xytex website, which looked very professional. They were impressed by the screening procedures described on the website, and they thoroughly scrutinized

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

the medical and social histories of the sperm donors on the website. The Xytex Corporation

seemed to be the sperm bank with the most rigorous qualification standards.

31.     In order to confirm that the Xytex Corporation was actually conducting the sort

of testing and screening of sperm donors that it claimed on its website, Jane Doe 1 and Jane Doe

2 called the Xytex Corporation directly. They spoke with Defendant Mary Hartley, and they

asked her if she knew of any Xytex sperm donors that had a particularly impressive health and

education history. In response to that question, Mary Hartley immediately singled out a specific

Xytex sperm donor, Donor #9623, and stated that although he did not yet have a profile that had

been published on the Xytex website, his sperm had already been used to successfully inseminate

women. Mary Hartley also said that Donor #9623 was "ultra intelligent," and she said that he

was "like a model." Mary Hartley told Jane Doe 1 and Jane Doe 2 that Donor 9623's sperm

would be sold out as soon as his profile was published on the Xytex website. Moments after this

in-depth phone conversation with Mary Hartley, Jane Doe 1 and Jane Doe 2 purchased sperm

from Donor #9623 from the Xytex Corporation.

32.     Jane Doe 1 and Jane Doe 2 purchased the sperm from Donor #9623 through a

credit card transaction with the Xytex Corporation, and the Xytex Corporation then sent the

sperm purchased from Donor #9623 to San Francisco, California.

33.     Subsequently, in San Francisco, California, licensed medical professionals

introduced sperm from Donor #9623 into Plaintiff Jane Doe 1 in an artificial insemination

procedure. Approximately nine months later, Jane Doe 1 gave birth to P.S. in San Francisco,

California. P.S. is now nine years old. After the procedure, Jane Doe 1 and Jane Doe 2 still had

vials of sperm from Donor #9623 remaining, and they decided to have the sperm stored in San

Francisco, California, so that it could be used again if they decided to have another child in the

future.

34.     Thereafter, on April 19, 2015, Jane Doe 1 and Jane Doe 2 saw an article on the

website for the Associated Press that discussed a lawsuit that had been filed against the Xytex

13

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

Corporation. They discovered that their sperm donor, Xytex Donor #9623, was a mentally ill felon. They learned that Donor #9623 was schizophrenic, which is genetic and hereditary, thereby exposing their child to the most debilitating of mental illnesses. They learned that Donor #9623 had dropped out of college, and that he held no degrees whatsoever. They learned that Donor #9623 had pled guilty to residential burglary – a serious and violent crime, and a felony in most states. They learned that the photos of Donor #9623 had been altered to remove a large facial mole. All of this information was easily accessible through a completely rudimentary online search, as Donor #9623, his mother, and his father provided it all on websites such as Facebook, YouTube, and elsewhere.

35.     Subsequently, on January 11, 2016, Jane Doe 1 sent an email to Ronda Drake, an agent of the Xytex Corporation, and she expressed concern regarding the fact that Donor #9623 was a diagnosed schizophrenic. In response, Ms. Drake said that she was not aware "of any reported medical issues," related to the donor "you have in storage," Donor #9623.

36.     Additionally, on January 11, 2016, Jane Doe 1 received an email from Defendant J. Todd Spradlin, the Chief Medical and Laboratory Director for the Xytex Corporation, in which Dr. Spradlin said that the lawsuit regarding Donor #9623 that had been filed against Xytex had been dismissed, and that he had "received no information to confirm that Donor 9623 has schizophrenia." Defendant Spradlin also said, in the same email, that it "would be irresponsible of Xytex to notify clients of unsubstantiated claims." Defendant Spradlin made these statements despite the fact that publicly accessible, irrefutable, verified medical documents unquestionably proved that Donor #9623, James Christian Aggeles, was a diagnosed schizophrenic. Thus, even in January of this year, 2016, years after the Xytex Corporation had been alerted to publicly accessible documents that proved that Donor #9623 had been diagnosed with schizophrenia, Defendant J. Todd Spradlin, an agent of defendants herein, told Jane Doe 1 that he had no information to confirm that Donor #9623 was schizophrenic. Jane Doe 1 was then, in January of 2016, storing sperm from Donor #9623 for the purposes of artificial

14

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

insemination, and it appears that the Chief Medical Director for the Xytex Corporation, Defendant J. Todd Spradlin, did not have any concerns about sperm from Donor #9623 being used for the purpose of artificial insemination.  Again, this occurred years after Xytex was exposed to irrefutable public documents that prove that Donor #9623 is a diagnosed schizophrenic, and a convicted felon.

## DAMAGES

37.     Recently, Jane Doe 1 and Jane Doe 2 have come to discover that their child, P.S., has needed counseling.  Jane Doe 1 and Jane Doe 2 have spent a significant amount of money on such counseling.  Additionally, Jane Doe 1 and Jane Doe 2 have each attended conferences regarding best practices for parents in their situation, and they have unquestionably incurred a profound amount of stress and worry.

38.     As a further result of the conduct of all Defendants, set forth hereinabove, Jane Doe 1 and Jane Doe 2 suffered injuries in the form of physical and emotional pain and suffering.

39.     As an additional result of the conduct of all Defendants, set forth hereinabove, Jane Doe 1 and Jane Doe 2 have been required to, and will be required to, expend funds to evaluate and care for their child to ensure that should she become schizophrenic, she will have the best care possible, and that, should her schizophrenia develop, she will be diagnosed and treated so as to prevent further injury to Jane Doe 1 and Jane Doe 2.

## V.   WHAT XYTEX HAS DONE SINCE THE TRUTH ABOUT JAMES CHRISTIAN AGGELES HAS BEEN EXPOSED.

40.     Although the Xytex website declares that the Corporation is all about people and creating families, and although it asserts that Xytex informs sperm recipients when something significant about their Xytex sperm donor has come to light, Xytex has not told the truth about James Christian Aggeles to anyone who received his sperm.

15

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

41.      In fact, after Xytex was alerted to publicly accessible documents that unquestionably proved that James Christian Aggeles was a schizophrenic with an extensive arrest history, the Xytex Corporation and its representatives and employees continued to sell and promote sperm from Donor #9623.  Defendant J. Todd Spradlin, the Chief Medical and Laboratory Director for Xytex, stated in an e-mail to Plaintiff Jane Doe 1, on **January 11, 2016**, that he had "no information to confirm that Donor 9623 has schizophrenia."  The Xytex Corporation, and other Defendants here, have all refused to concede the truth about James Christian Aggeles, and they have recklessly pursued their commercials motives without any consideration for the safety of the Plaintiffs, or their children.

42.      Not only has the Xytex Corporation refused to disseminate the truth about James Christian Aggeles, and help the recipients of his sperm, it continued to sell the sperm of Donor #9623 after the his arrest history and mental illnesses came to light.  All the while, publicly accessible, irrefutable documents unquestionably proved that Donor #9623 was a convicted burglar with a series of mental health illnesses.  Nevertheless, the Xytex Corporation has recklessly pursued its commercial motives without any consideration for the lives it was destroying, and this was done in conscious disregard for the safety of the public, and the persons who purchased sperm from Donor #9623.

43.      Rather than help the persons who received sperm from Donor #9623, and their children who were conceived as a result of the sperm received from Donor #9623, the Xytex Corporation has vowed to "vigorously defend itself."  If the Xytex Corporation, and all other Defendants here, are never held accountable for their reckless, callous, and injurious behavior, they will continue to misrepresent the truth and destroy innocent peoples' lives with impunity.

16

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

### FIRST CAUSE OF ACTION
### (Intentional Misrepresentation - Fraud)
(Against ALL Defendants)

44.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

45.     The Xytex Corporation, and other Defendants herein, made representations to Plaintiffs Jane Doe 1 and Jane Doe 2 about Xytex sperm Donor #9623 that were presented to the Jane Doe 1 and Jane Doe 2 as true.

46.     The representations made by the Xytex Corporation, and other Defendants herein, were false.

47.     The Xytex Corporation, and other Defendants herein, knew that the representations were false when they were made, or the Xytex Corporation, and other Defendants herein, made the representations recklessly and without regard for their truth.

48.     The Xytex Corporation, and other Defendants herein, intended that the Plaintiffs rely on their representations in purchasing sperm from Xytex sperm Donor #9623.

49.     Jane Doe 1 and Jane Doe 2 reasonably relied on the representations made by the Xytex Corporation, and other Defendants herein, and were harmed as a result.  Jane Doe 1 and Jane Doe 2's reliance on the representations made by the Defendants was a substantial factor in causing their harm.

50.     All Defendants, and each of them, acted fraudulently, and with malice and oppression and the Plaintiffs are thereby entitled to punitive damages.

WHEREFORE, the Plaintiffs pray for judgment against all DEFENDANTS as hereinafter set forth.

### SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)
(Against ALL Defendants)

51.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

17

52.     The Xytex Corporation, and other Defendants herein, made representations to Plaintiffs Jane Doe 1 and Jane Doe 2 about Xytex sperm Donor #9623 that were presented to the Jane Doe 1 and Jane Doe 2 as true.

53.     The representations made by the Xytex Corporation, and other Defendants herein, were false.

54.     The Xytex Corporation, and other Defendants herein, had no reasonable grounds for believing that the representations were true when they were made.

55.     The Xytex Corporation, and other Defendants herein, intended that the Plaintiffs rely on their representations in purchasing sperm from Xytex sperm Donor #9623.

56.     Jane Doe 1 and Jane Doe 2 reasonably relied on the representation made by the Xytex Corporation, and other Defendants herein, and were harmed as a result.  Jane Doe 1 and Jane Doe 2's reliance on the representations made by the Defendants was a substantial factor in causing their harm.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### THIRD CAUSE OF ACTION
### (Products Liability - Strict Liability)
(Against ALL Defendants)

57.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

58.     The semen that was manufactured, and/or distributed, and/or sold or supplied by the Xytex Corporation, and other Defendants herein, was defective and unsafe at the time it was distributed and used by the Plaintiffs because it contained genetic material about which no warnings were given.

18

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

59.    The defective semen harmed Jane Doe 1 and Jane Doe 2 even though Jane Doe 1 and Jane Doe 2 used the semen as intended, in a foreseeable manner, and in a manner in which the defendants knew it would be used.

60.    The semen's defect was a substantial factor in causing the harm incurred by Jane Doe 1 and Jane Doe 2.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## FOURTH CAUSE OF ACTION
### (Products Liability - Negligence)
(Against ALL Defendants)

61.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

62.    The Xytex Corporation, and other Defendants herein, at all times relevant, had a duty to properly test, analyze, inspect, research, distribute, evaluate, review, recommend and provide proper warnings for the sperm that was sold to Plaintiffs Jane Doe 1 and Jane Doe 2.

63.    The Xytex Corporation, and other Defendants herein, at all times relevant, knew that the product was of such a nature that if it was not properly tested, inspected, labeled, distributed, reviewed, evaluated, marketed, promoted, and recommended, it was likely to injure users.

64.    The Xytex Corporation, and other Defendants herein, breached their duty to Plaintiffs Jane Doe 1 and Jane Doe 2 by negligently and carelessly recommending, promoting, failing to test, failing to review, failing to evaluate, and failing to inspect the semen that caused injuries and damages to Jane Doe 1 and Jane Doe 2.

65.    The negligence of the Xytex Corporation, and other Defendants herein, was a substantial factor in causing the harm incurred by Jane Doe 1 and Jane Doe 2.

19

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### FIFTH CAUSE OF ACTION
### (Breach of Express Warranty)
(Against ALL Defendants)

66.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

67.    The Xytex Corporation, and other Defendants herein, made representations about the quality of the semen being sold to Jane Doe 1 and Jane Doe 2, and presented themselves as experts in the determination of quality and reliability of the said semen, and thereby created a warranty through their oral and written representations.  The Defendants also promised to inform Jane Doe 1 and Jane Doe 2 of any significant information learned or acquired about the semen, and the respective semen donor, Xytex sperm Donor #9623.

68.    The semen sold and distributed by the Xytex Corporation, and other Defendants herein, was not at all consistent with, or reflective of, the representations that had been made by the Defendants.

69.    Jane Doe 1 and Jane Doe 2 took reasonable steps to notify the Defendants that the semen was not what it was represented to be.

70.    The Xytex Corporation, and other Defendants herein, failed to provide Jane Doe 1 and Jane Doe 2 with significant information that has been learned or acquired about Xytex sperm Donor #9623 as promised.

71.    The failure of the sperm to be as represented was a substantial factor in causing the harm incurred by Jane Doe 1 and Jane Doe 2.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

20

## SIXTH CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)
(Against ALL Defendants)

72.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

73.     Jane Doe 1 and Jane Doe 2 purchased semen from Defendant Xytex Corporation.

74.     The Xytex Corporation, and other Defendants herein, at the time of purchase, were in the business of selling such goods, or by their occupations, held themselves out as having special knowledge or skill regarding such goods.

75.     The semen that was sold to Jane Doe 1 and Jane Doe 2 by the Xytex Corporation, and other Defendants herein, was not of the same quality as is generally acceptable in the trade, and it was not fit for the ordinary purposes for which such goods are used.

76.     Jane Doe 1 and Jane Doe 2 took reasonable steps to notify the Xytex Corporation, and other Defendants herein, within a reasonable time that the semen did not have the expected quality.

77.     Jane Doe 1 and Jane Doe 2 were harmed as a result, and the failure of the semen to have the expected quality was a substantial factor in causing the harm incurred by Jane Doe 1 and Jane Doe 2.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### (Battery)
(Against ALL Defendants)

78.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

21

79.    The Xytex Corporation, and other Defendants herein, perpetrated a battery upon Jane Doe 1. The Defendants, by selling the sperm of a person who was not the person defendants said he was, and not the person all Plaintiffs understood him to be, thereby caused Jane Doe 1 to be inseminated with the semen of a person to whom she would not have consented. This amounts to a nonconsensual, offensive contact, and is thus, a battery.

80.    In committing the said battery, the Xytex Corporation, and other Defendants herein, acted intentionally and with malice and with conscious disregard for the health and safety of said Plaintiffs and the general public, thereby entitling said Plaintiffs to punitive damages.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## EIGHT CAUSE OF ACTION
### (Negligence)
(Against ALL Defendants)

81.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

82.    In doing the acts herein alleged, the Xytex Corporation, and other Defendants herein, acted carelessly and negligently and caused all Plaintiffs injuries and damages thereby.

WHEREFORE, Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## NINTH CAUSE OF ACTION
### (Specific Performance)
(Against ALL Defendants)

83.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

84.    Plaintiffs are entitled to specific performance because there was (1) a legally enforceable agreement between Jane Doe 1 and Jane Doe 2 and the Xytex Corporation, which was sufficiently certain in its terms; there was (2) adequate consideration for the agreement, and

22

it was a just and reasonable agreement; the (3) Plaintiffs, and each of them, tendered their performances by purchasing human sperm from the Xytex Corporation; the (4) Defendants breached the agreement because they have failed to honor to their promise to disseminate, to sperm purchasers, significant information that is discovered about a donor; and the (5) Plaintiffs have no adequate remedy at law because, in order to effectively treat and care for their children, they need to know as much as possible about James Christian Aggeles, Donor #9623. However, the Plaintiffs cannot effectively treat their children while the Defendants refuse to disseminate what they actually know to be true about James Christian Aggeles.

85.     Before Jane Doe 1 and Jane Doe 2 purchased sperm from the Xytex Corporation, the Xytex Corporation agreed to disseminate significant new information that it learned or discovered about a donor. Notwithstanding this promise, and the facts that have come to light regarding Xytex Donor #9623's mental health issues, criminal issues, and lack of secondary education, the Xytex Corporation has repeatedly refused to disseminate any of the information that can easily be verified by publicly accessible documents.

86.     Thus, the Defendants have breached the agreement, and because the Plaintiffs have no adequate remedy at law, the Defendants should be required to perform their obligations under the legally enforceable agreement and disseminate what they know about James Christian Aggeles to any and all purchasers of sperm that came from Xytex Donor #9623.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## TENTH CAUSE OF ACTION
### (False Advertising)
(Against ALL Defendants)

87.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

88.     The Xytex Corporation, and other Defendants herein, promoted misrepresentative information about the nature, characteristics, and qualities of Xytex Donor #9623, the Plaintiffs relied on that misleading information in purchasing sperm from James Christian Aggeles, Donor #9623, and in using it in an artificial insemination procedure.

89.     The Xytex Corporation, and other Defendants herein, knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading.

90.     The Plaintiffs were injured by these deceptive advertising practices, and now seek relief for their injuries.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION
### (California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*)
(Against ALL Defendants)

91.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

92.     The conduct of the Xytex Corporation, and the other Defendants herein, violated the California Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200, *et seq.*

93.     Plaintiffs allege that the unfair and unlawful business practices complained of herein are and were the regular business practice of Defendants.

94.     Through Defendants' failure to provide truthful information about the semen they sold and/or advertised or distributed to Plaintiffs Jane Doe 1 and Jane Doe 2, Defendants have engaged in, and continue to engage in, unlawful and unfair business practices in violation of the UCL, and have caused Plaintiffs Jane Doe 1 and Jane Doe 2 to suffer harm, and to lose money.  Defendants' actions described herein constitute an unfair business practice or act within the meaning of the UCL.

24

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

95.    Injunctive relief pursuant to California Business and Professions Code Section 17203 is necessary to prevent Defendants from continuing to engage in unfair business practices as alleged in this Complaint.  Defendants and/or persons acting in concert with Defendants have done, are now doing, and will continue to do or cause to be done, the illegal acts alleged in this Complaint, unless restrained and enjoined by this Court.  Unless the relief prayed for below is granted, a multiplicity of actions will result.  Plaintiffs have no plain, speedy, or adequate remedy at law, and the continuing violation of law by Defendants will cause great and irreparable damage to Plaintiffs unless Defendants are immediately restrained from committing further illegal acts.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### TWELFTH CAUSE OF ACTION
### (Wrongful Birth)
(Against ALL Defendants)

96.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

97.    The Xytex Corporation, and other Defendants herein, negligently failed to warn Jane Doe 1 and Jane Doe 2 of the risk that P.S. would be born with a genetic impairment or disability.

98.    The Xytex Corporation, and other Defendants herein, negligently failed to perform the appropriate tests, and/or provide the appropriate advice, that would more likely than not have disclosed the risk that P.S. would be born with a genetic impairment/disability.

99.    Resultantly, Jane Doe 1 and Jane Doe 2 gave birth to a child, P.S., born with genetic impairments and/or disabilities.

100.    If Jane Doe 1 and Jane Doe 2 had known of the genetic impairment(s) and/or disability(s) that was/were likely to develop in their child, they would not have conceived P.S.

25

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

101.   The negligence of the Xytex Corporation, and other Defendants herein, was a substantial factor in causing Jane Doe 1 and Jane Doe 2 to have to pay extraordinary expenses to care for P.S.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE PLAINTIFFS SEEK RELIEF AS FOLLOWS:

1.   Pain and suffering according to proof;

2.   Financial losses according to proof;

3.   Attorneys fee;

4.   Costs of suit;

5.   Medical Monitoring Fund;

6.   Injunctive Relief; and

7.   Punitive Damages

## JURY DEMAND

Plaintiffs also hereby demand a jury trial in this action.

DATED:  April 18, 2016

HERSH & HERSH
A Professional Corporation

NANCY HERSH
BRENDAN GANNON
Attorneys for Plaintiffs

26

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED