# EXHIBIT B

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Nancy Hersh, SBN 49091, Brendan Gannon, SBN 303410
Hersh and Hersh
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102
TELEPHONE NO.: 415-441-5544    FAX NO.: 415-441-7586
ATTORNEY FOR *(Name):* Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
Doe v. Xytex Corporation, et al.

**FOR COURT USE ONLY**

F I L E D
Superior Court of California
County of San Francisco

APR 18 2016

CLERK OF THE COURT
BY: _Arlene Ramos_
                Deputy Clerk

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CGC-16-551538 |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[✓] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is [✓] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 18, 2016
Brendan Gannon
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CASE NUMBER: CGC-16-551538 JANE DOE 1, INDIVIDUAL ET AL VS. XYTEX CORPORATION

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:**     **SEP-21-2016**

**TIME:**     **10:30AM**

**PLACE:**     **Department 610**
                **400 McAllister Street**
                **San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

> CRC 3.725 requires the filing and service of a case management statement form CM-110
> no later than 15 days before the case management conference.  However, it would facilitate
> the issuance of a case management order  **without an appearance**  at the case
> management conference if the case management statement is filed, served and lodged in
> Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and
complaint. Proof of service subsequently filed with this court shall so state.  **This case is
eligible for electronic filing and service per Local Rule 2.11.  For more information,
please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

> **IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL
> CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-
> JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR
> SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION
> PRIOR TO A TRIAL.**
> (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each
defendant along with the complaint.  All counsel must discuss ADR with clients and opposing
counsel and provide clients with a copy of the Alternative Dispute Resolution Information
Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the
place of filing a written response to the complaint. You must file a written
response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3869

See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.

1  NANCY HERSH, State Bar No. 49091
2  KATE HERSH-BOYLE, State Bar No. 278864
   BRENDAN GANNON, State Bar No. 303410
3  HERSH & HERSH
   A Professional Corporation
4  601 Van Ness Avenue, Suite 2080
   San Francisco, CA 94102-6396
5  (415) 441-5544

6  Attorneys for Plaintiffs
7  JANE DOE 1 & JANE DOE 2

**ELECTRONICALLY**
**FILED**
*Superior Court of California,*
*County of San Francisco*
**05/13/2016**
**Clerk of the Court**
BY:VANESSA WU
**Deputy Clerk**

8

9         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10           **IN AND FOR THE COUNTY OF SAN FRANCISCO**

11

12  JANE DOE 1 & JANE DOE 2, individuals,     )  Case No.: CGC-16-551538
                                              )
13                      Plaintiffs,           )  **REDACTED NOTICE OF MOTION AND**
                                              )  **MOTION TO PROCEED**
14  vs.                                       )  **ANONYMOUSLY AS "JANE DOE**
                                              )  **1"AND "JANE DOE 2" PLAINTIFFS**
15                                            )
16  XYTEX CORPORATION, a Georgia              )  **Reservation No.: 04260613-03**
    Corporation; XYTEX CRYO                   )
17  INTERNATIONAL LTD., a Georgia             )  Date: June 13, 2016
    Corporation; MARY HARTLEY, an             )  Time: 9:30 a.m.
18  individual; J. TODD SPRADLIN, an          )  Dept.: 302
    individual; and DOES 1-25, inclusive,     )  Trial Date:
19                                            )
                                              )  Complaint filed: April 18, 2016
20                      Defendants.           )
                                              )
21  _____  )

22

23      **TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD**

24      PLEASE TAKE NOTICE that on June 13, 2016, at 9:30 a.m., in Department 302 of the

25  above-entitled court, located at 400 McAllister Street, San Francisco, California, 94102,

26  Plaintiffs, "JANE DOE 1" and "JANE DOE 2" ███████████████████████

27

28

                                        1

("Plaintiffs"), will and hereby do move this Court for an order permitting Plaintiffs to proceed in this action as "JANE DOE 1" and "JANE DOE 2."

This motion is based upon this Notice, the Memorandum of Points & Authorities in Support of this Motion to Proceed Anonymously as "JANE DOE 1" and "JANE DOE 2" Plaintiffs, Declaration of Nancy Hersh filed concurrently herewith, and all other pleadings and records on file herein, and such argument and other evidence as may be offered at the time of the hearing upon the Motion.

Plaintiffs have filed concurrently herewith a Motion to Seal Portions of the Court's File, pursuant to California Rules of Court, Rules 2.550 and 2.551. In that motion, Plaintiffs have specifically requested that this Notice, including the Memorandum of Points and Authorities, Declaration of Nancy Hersh, and the Order, be sealed along with any other documents that identify the Plaintiffs, or their child. Plaintiffs hereby incorporate by reference the arguments made in their Motion to Seal, and request that the Court Order that this Notice, and the accompanying Motion, its supporting documents, and the Order thereon be maintained permanently under seal, with a redacted copy kept in the Court's file for public review.

DATED: May 13, 2016

<div style="margin-left:40%">

HERSH & HERSH
A Professional Corporation


NANCY HERSH
Attorneys for Plaintiffs

</div>

2

## PROOF OF SERVICE
### *Jane Doe 1 and Jane Doe 2 v. Xytex, et al.*
### San Francisco Superior Court Case #CGC-16-551-538

I, Lauren Diaz, declare: I am employed in the City and County of San Francisco, California. I am over the age of 18 years and not a party to the within action or proceeding; my business address is 601 Van Ness Avenue, Suite 2080, San Francisco, California 94102-6388.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On **May 13, 2016**, I served a true copy of the following documents:

**1. Redacted and Non Redacted Notice of Motion and Motion to Proceed Anonymously as "Jane Doe 1" and "Jane Doe 2" Plaintiffs**

**2. Redacted and Non Redacted Declaration of Nancy Hersh in Support of Motion to Proceed Anonymously as "Jane Doe 1" and "Jane Doe 2" Plaintiffs**

**3. Redacted and Non Redacted Plaintiffs' Memorandum of Points and Authorities in Support of Motion to Proceed Anonymously as "Jane Doe 1" and "Jane Doe 2" Plaintiffs**

**4. Redacted and Non Redacted [Proposed] Order on Motion to Proceed Anonymously as "Jane Doe 1" and "Jane Doe 2" Plaintiffs**

in said action by placing a true copy thereof, enclosed in a sealed envelope, each envelope addressed as follows:

| |
|---|
| John Supple, Esq.<br>J SUPPLE LAW<br>2330 Marinship Way, Suite 250<br>Sausalito, CA 94965<br>415-366-5533<br>Fax: 415-480-6301<br>Email: jsupple@jsupplelaw.com<br>***Attorneys for Defendants Xytex Corporation, Xytex Cryo International LTD., Mary Hartley, and J. Todd Spradlin*** |

  **X**    **(BY MAIL)** I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid in San Francisco, California.

HERSH AND HERSH
A Professional Corporation

1

**X**    **(BY ELECTRONIC SERVICE)** Based on a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed above.

2

3           I declare under penalty of perjury under the laws of the United States of America

4   that the above is true and correct. Executed on **May 13, 2016**, at San Francisco, California.

5

6                                            LAUREN DIAZ

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HERSHANDHERSH
A Professional Corporation

1  NANCY HERSH, State Bar No. 49091
2  KATE HERSH-BOYLE, State Bar No. 278864
   BRENDAN GANNON, State Bar No. 303410
3  HERSH & HERSH
   A Professional Corporation
4  601 Van Ness Avenue, Suite 2080
   San Francisco, CA 94102-6396
5  (415) 441-5544
6
   Attorneys for Plaintiffs
7  JANE DOE 1 & JANE DOE 2

8
9            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10           **IN AND FOR THE COUNTY OF SAN FRANCISCO**

11  JANE DOE 1 & JANE DOE 2, individuals,    )    Case No.: CGC-16-551538
                                              )
12                    Plaintiffs,             )
                                              )    **REDACTED PLAINTIFFS'**
13  vs.                                       )    **MEMORANDUM OF POINTS AND**
                                              )    **AUTHORITIES IN SUPPORT OF**
14                                            )    **MOTION TO PROCEED**
    XYTEX CORPORATION, a Georgia              )    **ANONYMOUSLY AS "JANE DOE 1"**
15  Corporation; XYTEX CRYO                   )    **AND "JANE DOE 2" PLAINTIFFS**
    INTERNATIONAL LTD., a Georgia             )
16  Corporation; MARY HARTLEY, an             )    **Reservation No.: 04260613-03**
17  individual; J. TODD SPRADLIN, an          )
    individual; and DOES 1-25, inclusive,     )    Date: June 13, 2016
18                                            )    Time: 9:30 a.m.
                                              )    Dept.: 302
19                    Defendants.             )    Trial Date: None Set
                                              )
20                                            )    Complaint filed: April 18, 2016

21
22                    **I.    INTRODUCTION**

23        Plaintiffs, "JANE DOE 1" and "JANE DOE 2" ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

24  ▆▆▆▆ ("Plaintiffs"), filed a Complaint as "JANE DOE 1" and "JANE DOE 2." Plaintiffs now

25  seek an Order permitting Plaintiffs to proceed anonymously in this litigation. Plaintiffs' names
26
    must be kept anonymous because anonymity is necessary to preserve Plaintiffs' and Plaintiffs'
27

28
                                              1

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**05/13/2016**
**Clerk of the Court**
BY:VANESSA WU
**Deputy Clerk**

minor child's right to privacy in a matter that is highly sensitive and personal in nature and that

involves close media attention. Further, the need for anonymity outweighs any concern of

prejudice to the opposing parties and public.  Defendant knows Plaintiffs' true names.

Plaintiffs have also filed contemporaneously a Motion to Seal portions of the Court's

File, for the purpose of sealing this Motion, and all accompanying documents, and any future

filings that would reveal Plaintiffs' identities, their child's identity, including their names, or

their child's name/date of birth. Therefore, this Motion is filed "CONDITIONALLY UNDER

SEAL" pursuant to California Rules of Court, Rule 2.550(d), with a redacted copy publicly filed.

## II.    RELEVANT FACTS

Plaintiffs filed their Complaint on April 18, 2016 as JANE DOE 1 and JANE DOE 2

against Defendants Xytex Corporation, Xytex Cryo International LTD, Mary Hartley, and J.

Todd Spradlin ("Xytex Defendants"). *See* Plaintiffs' Complaint ("Compl.") which is attached

hereto as Exhibit A to the Declaration of Nancy Hersh ("Hersh Decl."). Plaintiffs alleged therein

that they reside in San Francisco, California and have one child, P.S., who was conceived as a

result of their purchase of semen from Defendant Xytex Corporation. Hersh Decl., Exhibit A,

Comp., ¶¶ 1 and 2. Plaintiffs' Complaint pleads, in great detail, factual allegations and causes of

action against the Xytex Defendants for Intentional Misrepresentation, Negligent

Misrepresentation, Products Liability – Strict Liability, Products Liability – Negligence, Breach

of Express Warranty, Breach of Implied Warranty, Battery, Negligence, Specific Performance,

False Advertising, Unfair Business Practices and Wrongful Birth. The allegations arise out of the

Xytex Defendants' sale of sperm from a Xytex Donor, Donor #9623, a diagnosed schizophrenic

and a convicted felon, who Defendants had assisted in falsifying his donor profile, upon which

Plaintiffs relied in selecting the sperm that they would then use to conceive their child, and

2

thereby misleading Plaintiffs as well as other parents and inducing them to purchase sperm. Hersh Decl., Exh. A, Compl., ¶¶ 12-14.

At the time Plaintiffs purchased the sperm with which they conceived their child, Xytex Corporation promoted the sperm Donor #9623, James Christian Aggeles, as a genius, with an IQ of 160, with multiple college degrees, a clean mental health history, and no criminal background. *Id.*, ¶ 22.   However, the truth was that Mr. Aggeles did not have even a college degree when he applied to become a donor, had a very clear and distinct history of diagnoses with Schizophrenia, Narcissistic Personality Disorder, and a drug induced psychotic disorder, as well as significant grandiose delusions, and he had an arrest and conviction history for burglary. *Id.*, ¶ 13. While simple online research would have revealed as much, Defendant Xytex Corporation and the Xytex Defendants did nothing to investigate the donor's claims concerning his background, education, mental health, or legal history. *Id.*, ¶ 14. Further, Defendant Mary Hartley spoke to the donor at the time he was applying to be a donor, and he informed her that he thought his IQ was about 130, and Defendant Hartley suggested that he was a genius with an IQ of 160, informing him that more educated donors did well selling their sperm. *Id.*, ¶ 22. From 2000 to 2016, Xytex Corporation and the other Xytex Defendants sold and promoted the sperm of Donor # 9623, making false representations including, but not limited to, representations that the donor had a Bachelor's degree, a Master's Degree, was working towards his Ph.D. in Neuroscience Engineering, had an IQ of 160, an impressive health history, was one of their most popular donors, was so popular that his sperm was rarely available, and that his photographs (although doctored) were authentic. *Id.*, ¶¶ 25-27.

Plaintiffs, a same-sex couple residing in San Francisco, pursued artificial insemination and heard about Xytex through friends. *Id.*, ¶ 30. After doing online research, they found Xytex

3

Corporation and were impressed by its representations concerning its screening procedures, including that Xytex Corporation scrutinized the medical and social histories of the sperm donors. *Id.*, ¶ 30. Plaintiffs even spoke to Defendant Mary Hartley to confirm Xytex Corporation's representations concerning screening and to ask if Defendant Mary Hartley knew of any donors with impressive health and education histories. *Id.*, 31. Defendant Mary Hartley singled out Donor #9623, complimenting him and encouraging their purchase of his sperm, saying he was "ultra intelligent" and "like a model." Hersh Decl., Exh. A, Compl. at ¶ 31. Plaintiffs purchased his sperm. *Id.*, ¶ 31. Jane Doe 1 was thereafter artificially inseminated with the sperm and months later gave birth to P.S., who is now nine years old. *Id.* ¶ 33.

On April 19, 2015, Jane Doe 1 and Jane Doe 2 saw an article on the Associated Press that discussed a lawsuit that had been filed against Xytex Corporation concerning misrepresentations by Xytex to purchasers of Donor #9623's sperm, specifically that Donor #9623 was mentally ill and a felon and that he had dropped out of college, and that his photos had been doctored. *Id.* ¶ 34. In their Complaint, Plaintiffs seek damages, including, but not limited to, pain and suffering, financial losses, attorney's fees, costs of suit and medical monitoring for their child, who is genetically predisposed to mental illness. *Id., See Prayer for Relief* at p. 26. Defendants confirmed that the Xytex sperm donor involved, Donor #9623, has at least 36 offspring as a result of his sperm donation. *Id.* ¶ 16.

## III.    ARGUMENT

### A.    The Facts of this Case Require that the Plaintiffs' Identities be Kept Anonymous.

Plaintiffs filed their complaint as "JANE DOE 1" and "JANE DOE 2." A copy of the complaint is attached as "EXHIBIT A" to the Declaration of Nancy Hersh for the Court's

4

convenience. The Complaint is replete with factual allegations. The Complaint makes clear that this case involves issues of extreme sensitivity for Plaintiffs and for the minor, Plaintiffs' child, at issue, including potential future injuries based on genetic predispositions, which would be become publicly available if identities or identifying information were revealed. If Plaintiffs' true names are disclosed and publicly accessible through court filings, the identity of P.S., their child, will also be revealed. Further, the following concerns exist: Plaintiffs would be unnecessarily damaged in their employment and personal associations; Media has shown great interest in the Xytex litigation and would inevitably be involved and would have access to Plaintiffs' identities, compromising their family, friends, employment and future, as well as that of their child; and Plaintiffs' child is a minor, and by this status and youth alone, should be protected.

The media has expressed great interest in the cases concerning Xytex Corporation. Hersh Decl. ¶ 5. Plaintiffs' minor child was conceived from sperm that came from a donor, who had mental illness, including schizophrenia, did not have the educational background represented and had a criminal record, and if Plaintiffs' identities are revealed, their young child's identity will also be revealed, and this will greatly impact the rest of the child's life. If Plaintiffs' names are known, the media will pounce on the story, thrust the names of Plaintiffs straight into the public eye, and then Plaintiffs and their child will have their innermost personal information completely exposed. This is especially troubling for a child, whose private interests must be protected as the child develops in the world. The Court has the authority to protect against this harm.

Precedent has established that parties may proceed anonymously when nondisclosure of their identity is necessary to protect them from injury, ridicule, or personal embarrassment. *United States v. Doe* (1981) 655 F.2d 920, 922 n.1. This rule, allowing parties to proceed

5

anonymously, "simply recognizes that privacy or confidentiality concerns are sometimes

sufficiently critical that parties or witnesses should be allowed . . . to proceed anonymously."

*James v. Jacobsen* (1993) 6 F.3d 233, 238.  In order to preserve privacy in a matter that is

especially sensitive and of a highly personal nature, as here, parties may be allowed to proceed

anonymously.  *James*, 6 F.3d at 238; *Does I thru XXIII v. Advanced Textile Corp.* (2000) 214

F.3d 1058, 1068.  Across the county, and here in this circuit, a balancing test is used to determine

whether or not a "party's need for anonymity outweighs prejudice to the opposing party and the

public's interest in knowing the party's identity." *Advanced Textile*, 214 F.3d at 1068.

1.    **Anonymity is Necessary to Preserve Privacy in this Matter of
      Sensitive and Highly Personal Nature.**

In *Does I thru XXIII v. Advanced Textile Corp*, the Ninth Circuit noted that courts "have

permitted plaintiffs to use pseudonyms in three situations: (1) when identification creates a risk

of retaliatory physical or mental harm [citations]; (2) **when anonymity is necessary 'to**

**preserve privacy in a matter of sensitive and highly personal nature**,' [citations]; and (3)

when the anonymous party is 'compelled to admit [his or her] intention to engage in illegal

conduct, thereby risking criminal prosecution,' [citations]." *Id.* at 1068 [emphasis added].

Here, Plaintiffs purchased sperm from Defendants, and then used it to conceive their

child.  Thereafter, on April 19, 2015, Plaintiffs discovered that their sperm donor, Xytex sperm

Donor #9623, was a schizophrenic burglar and that the information that was presented to

Plaintiffs as true by the Xytex Defendants had been frabricated.  The facts are highly personal

and directly relate to Plaintiffs' fertility decisions, their family's health and wellness, their

sexuality, their family's future welfare and development, and their minor child's upbringing and

6

development. In order to preserve the sanctity of these sensitive and highly personal matters,

Plaintiffs must be allowed to proceed anonymously.

In light of the media's interest in the case, anonymity is especially necessary in order to

preserve the privacy of Plaintiffs and their child. With recent technological advancements,

information can be easily disseminated across the globe in seconds, and the law has taken that

fact into account when allowing plaintiffs to proceed anonymously. Accordingly, in *Starbucks*

*Corp. v. Superior Court*, the Court of Appeal noted that the "judicial use of 'Doe plaintiffs' to

protect legitimate privacy rights has gained wide currency, particularly given the rapidity and

ubiquity of disclosures over the World Wide Web." *Starbucks Corp. v. Superior Court* (2008)

168 Cal.App.4th 1436, 1452 n.7. Here, if Plaintiffs' true names are exposed, their most personal

and sensitive information will be indiscriminately projected throughout the World Wide Web,

and their child's privacy will be completely undermined in the process.

Some examples of cases in which parties were allowed to proceed anonymously due to

privacy considerations are relevant to this case because they involve concerns of future

stigmatization, protection of a person's rights and personal information. In *Hooper v.*

*Deukmejian*, the Court of Appeal thought that it was prudent to allow persons convicted of

relatively minor marijuana offenses to proceed anonymously in order to avoid further

stigmatization. *Hooper v. Deukmejian* (1981) 122 Cal.App.3d 987. In *Hooper*, a person

convicted of the lesser included offense of maintaining a place for the use or sale of a narcotic

brought suit as a "John Doe" to determine whether he was entitled to the benefits and protections

of marijuana reform legislation, and the Court of Appeal determined that was a sufficient privacy

concern that justified his use of the pseudonym "John Doe." *Id.* And, in *Doe v. Saenz*, a

convicted robber, having obtained a certificate of rehabilitation, was allowed to proceed as "Jane

Doe" in order to challenge a state agency's refusal to allow her to work as a social worker with a licensed community care facility. *Doe v. Saenz* (2006) 140 Cal.App.4th 960. Finally, in *Doe v. State Bar of California*, a suit was brought to enjoin disciplinary proceedings, and the plaintiff attorney was allowed to maintain his anonymity for privacy reasons by using a "Doe" designation, instead of his real name. *Doe v. State Bar of California* (1976) 415 F. Supp. 308.

Here, some of the most intimate details of Plaintiffs' lives will be exposed if they are not allowed to proceed anonymously. And, as is mentioned above, importantly, their nine-year-old child's identity will also be revealed if Plaintiffs' true names are made available, and the child's personal information will be comprised for the child's future. The privacy of Plaintiffs' child is at stake here, and the exposure of the child's identity, which is inevitable if the Plaintiffs' names or the child's true name are made available, will lead Plaintiffs and their child to suffer the sort of societal stigmatization that warranted the use of Jane and John Doe pseudonyms in *Hooper*, *Saenz*, and *Doe v. State Bar of California*. Additionally, the use of "Doe" designations has been especially approved when the sanctity of a child's privacy could be potentially jeopardized by disclosure of their true name. *Doe v. City of Los Angeles* (2007) 42 Cal. 4th 531. Here, Plaintiffs should be allowed to proceed under fictitious names because their nine-year-old child's privacy will be compromised if Plaintiffs are required to use their real names.

In addition to the fact that Plaintiffs' privacy concerns are more than sufficient to justify the use of fictitious names, the court should also consider that disclosure of Plaintiffs' identities would effectively chill other persons from coming forward and bringing suit under the same or similar circumstances. The Ninth Circuit has, by referencing federal cases in which employer retaliation was cited as a catalyst for a chilling effect, approved of the use of fictitious names in order to prevent such a chilling effect in this jurisdiction. *Advanced Textile* at 1073. Defendants

8

here, have by their own admission, confirmed that the Xytex sperm donor involved, Donor #9623, has at least 36 offspring as a result of his sperm donation activities. Thus, it is possible that there are unidentified parties, who conceived children using sperm from Xytex sperm Donor #9623, or another donor, who may fear that their personal identities, and those of their children, would be revealed to the public and media if they were to come forward and seek redress. Exposure of Plaintiffs' identities could easily result in a chilling effect, which would undermine the interests of justice. Plaintiffs should therefore be allowed to proceed under fictitious names in order to prevent the potentially chilling effects that may occur if they are required to reveal their true names.

Considering the incredibly sensitive and personal nature of the facts in this case, and their susceptibility to media sensationalism and publication, the use of Jane Doe pseudonyms is appropriate here, and, as explained below, the use of Jane Doe pseudonyms will not result in any prejudice whatsoever to Defendants, or the public.

### 2. The Need for Anonymity Outweighs Prejudice to the Opposing Parties and the Public.

The law is also clear in that the public's right to scrutinize governmental functioning is not necessarily impaired in any way when a party to a lawsuit is granted permission to proceed anonymously. *Doe v. Stegall* (1981) 653 F.2d 180, 185. This is because such a minor affordance of privacy to a particular party is completely different to a situation in which the trial itself is closed to the public. *Richmond Newspapers v. Va.* (1980) 448 U.S. 555, 573. Party anonymity does not obstruct the public's view of the issues, or the court's performance in resolving them. *Stegall* at 185. The assurance of fairness that is preserved by a public presence at trial is not lost simply because a party's cause is pursued under a fictitious name. *Id.*

9

In *Does I thru XXIII v. Advanced Textile Corp*, the defendants complained that they were prejudiced by the plaintiffs' use of fictitious names, but they failed to explain how they would actually be prejudiced. *Advanced Textile* at 1072. The defendants in *Advanced Textile* argued that they faced adverse publicity as a result of the lawsuit, but they failed to explain how knowledge of the plaintiffs' identities would have enabled them to counter that adverse publicity. The 9th Circuit rejected these arguments, and allowed the plaintiffs to proceed anonymously even though plaintiffs had not provided the defendants with the plaintiffs' true names.

**B. Defendants are Aware of Plaintiffs' True Identities.**

Plaintiffs provided their true names to Defendants. Defendants will therefore not be prejudiced in any way by Plaintiffs' use of fictitious names. The Defendants, with full knowledge of Plaintiffs' identities, will not be prejudiced whatsoever if Plaintiffs' legitimate privacy concerns allow for their use of 'Jane Doe' pseudonyms. Similarly, the public will suffer no prejudice if Plaintiffs are allowed to use fictitious names, because, as is mentioned above, Plaintiffs filed their complaint openly, the trial will be open to the public, and the media attention that the case has received means that the public will not in any way be prevented from scrutinizing the important issues in the case.

## IV.    CONCLUSION

For the reasons mentioned above, Plaintiffs should be allowed to proceed anonymously as "JANE DOE 1" and "JANE DOE 2."

DATED: May 13, 2016

HERSH & HERSH
A Professional Corporation

NANCY HERSH
Attorneys for Plaintiffs

10

1  NANCY HERSH, State Bar No. 49091
2  KATE HERSH-BOYLE, State Bar No. 278864
   BRENDAN GANNON, State Bar No. 303410
3  HERSH & HERSH
   A Professional Corporation
4  601 Van Ness Avenue, Suite 2080
   San Francisco, CA 94102-6396
5  (415) 441-5544
6
   Attorneys for Plaintiffs
7  JANE DOE 1 & JANE DOE 2

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**05/13/2016**
**Clerk of the Court**
**BY:**VANESSA WU
**Deputy Clerk**

8
9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

            IN AND FOR THE COUNTY OF SAN FRANCISCO
10

11  JANE DOE 1 & JANE DOE 2, individuals,      ) Case No.: CGC-16-551538
                                                )
12                    Plaintiffs,               )
                                                ) **REDACTED DECLARATION OF**
13                                              ) **NANCY HERSH IN SUPPORT OF**
    vs.                                         ) **MOTION TO PROCEED**
14                                              ) **ANONYMOUSLY AS "JANE DOE 1"**
                                                ) **AND 'JANE DOE 2" PLAINTIFFS**
15  XYTEX CORPORATION, a Georgia               )
    Corporation; XYTEX CRYO                     ) **Reservation No.: 04260613-03**
16  INTERNATIONAL LTD., a Georgia              )
    Corporation; MARY HARTLEY, an              )
17  individual; J. TODD SPRADLIN, an           ) Date: June 13, 2016
    individual; and DOES 1-25, inclusive,      ) Time: 9:30 a.m.
18                                              ) Dept.: 302
                                                ) Trial Date: None set
19                    Defendants.               )
                                                ) Complaint filed: April 18, 2016
20  _____ )

21

22      I, NANCY HERSH, declare:

23      1.      I am an attorney licensed to practice before all Courts of the State of California

24  and am a partner in the law firm of Hersh & Hersh, located at 601 Van Ness Avenue, Suite 2080,

25  San Francisco, California, attorneys for Plaintiffs herein.

26

27

28
                                                1

DECLARATION OF NANCY HERSH IN SUPPORT OF MOTION TO PROCEED ANONYMOUSLY AS 'JANE DOE 1"
AND "JANE DOE 2" PLAINTIFFS

2.    The matters referred to in this declaration are based upon my personal knowledge, except where otherwise indicated and, if called as a witness, I could and would testify competently thereto.

3.    I make this declaration in support of Plaintiffs' Motion to Proceed Anonymously as "JANE DOE 1" and "JANE DOE 2" Plaintiffs.

4.    Attached hereto as "**EXHIBIT A**" and incorporated by reference herein is a true and correct copy of Plaintiffs' Complaint that was filed in this Court on April 18, 2016.

5.    Plaintiffs, "JANE DOE 1" and "JANE DOE 2" ████████████████████

██████ wish to proceed in this action anonymously due to the intimate privacy issues raised by this action. The media has been very interested in this case because it involves issues of artificial insemination, sperm donation, corporate business practices, mental illness, and even criminal charges like burglary. The subject matter of the case is subject to media attention, and media sensationalism, and Plaintiffs therefore want to protect their privacy, and their child's privacy. I, along with other Counsel, have filed cases on behalf of other Plaintiffs who have decided not to proceed anonymously and the cases have become of great interest to media outlets and have been covered by CNN and other national and local news outlets.

6.    Defendants in this action and their attorneys of record are aware of the true identities of Plaintiffs herein, and, therefore, would not be prejudiced by an order permitting Plaintiffs to pursue this action anonymously, nor by an order sealing any documents containing information that would identify Plaintiffs or lead to the discovery of their identities.

7.    Plaintiffs have filed concurrently herewith a Motion to Seal Portions of the Court's File. In that motion, Plaintiffs have specifically requested that this Motion, including the Points and Authorities, this Declaration of Counsel, and the Order, be sealed, and any transcript

2

1  from the hearing on this motion, along with any other documents that identify the Plaintiffs, or

2  their child.

3          I declare under penalty of perjury that the foregoing is true and correct and if called as a

4  witness I could and would completely testify thereto.

5

6          Executed on May 13, 2016, at San Francisco, California.

7

8

9

10                                 NANCY HERSH

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF NANCY HERSH IN SUPPORT OF MOTION TO PROCEED ANONYMOUSLY AS "JANE DOE 1"
AND "JANE DOE 2" PLAINTIFFS

# EXHIBIT A



31

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN FRANCISCO

# Document Scanning Lead Sheet

Apr-18-2016 2:36 pm

Case Number: CGC-16-551538

Filing Date: Apr-18-2016 2:32

Filed by:  ARLENE RAMOS

Image: 05360583

COMPLAINT

JANE DOE 1, INDIVIDUAL ET AL VS. XYTEX CORPORATION, ET AL

001C05360583

**Instructions:**
Please place this sheet on top of the document to be scanned.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Please see attachment.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JANE DOE 1 & JANE DOE 2, individuals

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Francisco Superior Court<br>400 McAllister Street<br>San Francisco, CA 94102 | **CASE NUMBER:**<br>*(Número del Caso):*<br>**CGC-16-551538** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Nancy Hersh, Hersh and Hersh, 601 Van Ness Ave., Suite 2080, San Francisco, CA 94102 415-441-5544

| DATE: | APR 1 8 2016 | **CLERK OF THE COURT** | Clerk, by | *Arlene Ramos* | , Deputy |
|---|---|---|---|---|---|
| *(Fecha)* | | | *(Secretario)* | **ARLENE RAMOS** | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Doe v. Xytex Corporation, et al. | |

ATTACHMENT *(Number):* <u>One</u>

*(This Attachment may be used with any Judicial Council form.)*

Notice to Defendant:

XYTEX CORPORATION, a Georgia Corporation; XYTEX CRYO INTERNATIONAL LTD., a Georgia Corporation; MARY HARTLEY, an individual; J. TODD SPRADLIN, an individual; and DOES 1-25, inclusive

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page <u>1</u> of <u>1</u>

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT
to Judicial Council Form**

*www.courtinfo.ca.gov*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Nancy Hersh, SBN 49091, Brendan Gannon, SBN 303410<br>Hersh and Hersh<br>601 Van Ness Avenue, Suite 2080<br>San Francisco, CA 94102<br>TELEPHONE NO.: 415-441-5544    FAX NO.: 415-441-7586<br>ATTORNEY FOR *(Name):* Plaintiffs | FOR COURT USE ONLY<br><br>**F I L E D**<br>Superior Court of California<br>County of San Francisco<br><br>APR 18 2016<br><br>CLERK OF THE COURT<br>BY: _Arlene Ramos_<br>Deputy Clerk |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
Doe v. Xytex Corporation, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>CGC **-16-551538** |
|---|---|---|
| [✓] Unlimited     [ ] Limited<br>(Amount              (Amount<br>demanded           demanded is<br>exceeds $25,000)   $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[✓] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties          d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel     e. [ ] Coordination with related actions pending in one or more courts
          issues that will be time-consuming to resolve                 in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence              f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is  [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: April 18, 2016
Brendan Gannon
_____
(TYPE OR PRINT NAME)                                      ▶ _____
                                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|



**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
　　Asbestos Property Damage
　　Asbestos Personal Injury/
　　　Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
　　Medical Malpractice–
　　　Physicians & Surgeons
　　Other Professional Health Care
　　　Malpractice
Other PI/PD/WD (23)
　　Premises Liability (e.g., slip
　　　and fall)
　　Intentional Bodily Injury/PD/WD
　　　(e.g., assault, vandalism)
　　Intentional Infliction of
　　　Emotional Distress
　　Negligent Infliction of
　　　Emotional Distress
　　Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
　　Practice (07)
Civil Rights (e.g., discrimination,
　　false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel)
　　(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
　　Legal Malpractice
　　Other Professional Malpractice
　　　*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
　　Breach of Rental/Lease
　　　Contract *(not unlawful detainer
　　　　or wrongful eviction)*
　　Contract/Warranty Breach–Seller
　　　Plaintiff *(not fraud or negligence)*
　　Negligent Breach of Contract/
　　　Warranty
　　Other Breach of Contract/Warranty
Collections (e.g., money owed, open
　　book accounts) (09)
　　Collection Case–Seller Plaintiff
　　Other Promissory Note/Collections
　　　Case
Insurance Coverage *(not provisionally
　　complex)* (18)
　　Auto Subrogation
　　Other Coverage
Other Contract (37)
　　Contractual Fraud
　　Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
　　Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
　　Writ of Possession of Real Property
　　Mortgage Foreclosure
　　Quiet Title
　　Other Real Property *(not eminent
　　　domain, landlord/tenant, or
　　　foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
　　drugs, check this item; otherwise,
　　report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
　　Writ–Administrative Mandamus
　　Writ–Mandamus on Limited Court
　　　Case Matter
　　Writ–Other Limited Court Case
　　　Review
Other Judicial Review (39)
　　Review of Health Officer Order
　　Notice of Appeal–Labor
　　　Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
　　*(arising from provisionally complex
　　case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
　　Abstract of Judgment (Out of
　　　County)
　　Confession of Judgment *(non-
　　　domestic relations)*
　　Sister State Judgment
　　Administrative Agency Award
　　　*(not unpaid taxes)*
　　Petition/Certification of Entry of
　　　Judgment on Unpaid Taxes
　　Other Enforcement of Judgment
　　　Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
　　above)* (42)
　　Declaratory Relief Only
　　Injunctive Relief Only *(non-
　　　harassment)*
　　Mechanics Lien
　　Other Commercial Complaint
　　　Case *(non-tort/non-complex)*
　　Other Civil Complaint
　　　*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
　　Governance (21)
Other Petition *(not specified
　　above)* (43)
　　Civil Harassment
　　Workplace Violence
　　Elder/Dependent Adult
　　　Abuse
　　Election Contest
　　Petition for Name Change
　　Petition for Relief From Late
　　　Claim
　　Other Civil Petition

NANCY HERSH, State Bar No. 49091
BRENDAN GANNON, State Bar No. 303410
HERSH & HERSH
A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102-6396
(415) 441-5544
(415) 441-7586

Attorneys for Plaintiffs
JANE DOE 1 & JANE DOE 2

**F I L E D**
Superior Court of California
County of San Francisco

APR 1 8 2016

CLERK OF THE COURT
BY: _Arlene Ramos_
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

### UNLIMITED

**CGC-16-551538**

| | |
|---|---|
| JANE DOE 1 & JANE DOE 2, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>XYTEX CORPORATION, a Georgia Corporation; XYTEX CRYO INTERNATIONAL LTD., a Georgia Corporation; MARY HARTLEY, an individual; J. TODD SPRADLIN, an individual; and DOES 1-25, inclusive,<br><br>Defendants. | COMPLAINT FOR DAMAGES<br>1. Intentional Misrepresentation (Fraud)<br>2. Negligent Misrepresentation<br>3. Products Liability – Strict Liability<br>4. Products Liability – Negligence<br>5. Breach of Express Warranty<br>6. Breach of Implied Warranty<br>7. Battery<br>8. Negligence<br>9. Specific Performance<br>10. False Advertising<br>11. Unfair Business Practices<br>12. Wrongful Birth<br><br>JURY TRIAL DEMANDED |

1

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

## COMPLAINT

1.      Plaintiffs, JANE DOE 1 and JANE DOE 2, individually commence this action against Defendant Xytex Corporation ("Xytex" or "Xytex Corporation"), Defendant Xytex Cryo International LTD ("Xytex International"), Defendant Mary Hartley, an individual, Defendant J. Todd Spradlin, an individual, and Defendant Does 1 through 25.

## PARTIES

2.      Plaintiffs, JANE DOE 1 and JANE DOE 2 ("Plaintiffs") reside in San Francisco, California, and have one child, P.S., who was conceived as a result of their purchase of semen from Defendant Xytex Corporation.

3.      Defendant Xytex Corporation ("Xytex" or "Xytex Corporation") is a corporation with its principal place of business in Atlanta, Georgia. The Xytex Corporation is a for-profit seller of human semen. Plaintiffs acquired human semen for artificial insemination, and at all times relevant herein, Plaintiffs were sold human semen by Defendant Xytex Corporation.

4.      Defendant Xytex Cryo International LTD ("Xytex International") is a corporation organized and existing under the laws of the state of Georgia. Xytex International is a business that, at all times relevant, sold human semen to the Plaintiffs through its subsidiary, Defendant, Xytex Corporation. The selling and promotion of such human semen included, but was not necessarily limited to, the testing, collection, promotion, advertising, marketing, sales and distribution of donor semen. Additionally, Xytex International, through Defendant Xytex Corporation, supervised and coordinated the evaluation and selection of semen donors, the collection of which was advertised, marketed, sold, and promoted as a carefully curated group of extraordinarily smart, educated, and healthy persons.

2

5.      Defendant, Mary Hartley, and Does 1 through 10, are, and were at all times relevant herein, employees, agents, owners, and/or directors who worked at, or were associated with, the Atlanta Office of Defendants, Xytex Corporation and Xytex International. Defendant Mary Hartley, and Does 1 through 10, also recruited Donor #9623 Aggeles, and promoted Donor #9623 Aggeles to Plaintiffs through various mediums, on various dates, in various ways.

6.      Defendant, J. Todd Spradlin, and Does 11 through 15, are, and were at all times relevant herein, employees, agents, owners, directors, and/or doctors, physicians, medical professionals, examiners, and assistants who were associated with, the Atlanta Office of Defendants, Xytex Corporation and Xytex International.

7.      Defendants, Does 16 through 20, are, and were at all times relevant herein, distributors of donor semen, and/or companies, entities, or corporations that assisted the Xytex Corporation, and Xytex International, in selling and distributing human semen to Plaintiffs for purposes of artificial insemination.

8.      Defendants, Does 21 through 25, are, and were at all times relevant herein, persons who assisted the Xytex Corporation, and Xytex International, in selling and distributing human semen to Plaintiffs for purposes of artificial insemination.

9.      Plaintiffs do not know the true names of the defendants sued herein as Does 1 through 25, inclusive. Plaintiffs allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and caused injuries and damages to all Plaintiffs as set forth herein.

10.     All Defendants herein acted as the agent, servant and employee and/or in concert with each of the other said Defendants in doing the acts herein alleged.

3

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

# FACTUAL ALLEGATIONS

## I.    INTRODUCTION.

11.    The factual allegations section of this complaint will serve as a chronological presentation of the ways in which the Plaintiffs were injured and deceived by the Xytex Corporation. It will also seek to shed light on the despicable behavior of the Xytex Corporation. Xytex continues to act with callous disregard for the safety of those who are exposed to its products, and, in its unchecked and unregulated position, it will continue to disrupt and destroy innocent lives if it not held accountable for its conduct.

12.    In this case, the Xytex Corporation sold the Plaintiffs sperm from Xytex Donor #9623, James Christian Aggeles, a diagnosed schizophrenic, and a convicted felon. James Christian Aggeles completely fabricated his application to become a Xytex sperm donor, and the Xytex Corporation, and the other Defendants herein, actually assisted Mr. Aggeles in falsifying the information that was presented to the public as true.

13.    Since the very beginning, before James Christian Aggeles ever went to the Xytex office to fill out his Xytex sperm donor application on October 18, 2000, there were easily accessible, irrefutable, medical documents that proved that he had **already** been diagnosed by the medical professionals at Atlanta Regional Hospital, and the Northwest Georgia Regional Hospital, with Schizophrenia, Narcissistic Personality Disorder, a drug induced psychotic disorder, and significant grandiose delusions.

14.    Additionally, James Christian Aggeles did not have even one college degree when he applied to become a Xytex sperm donor on October 18, 2000, and he did not actually earn a college degree until 2015. Nevertheless, the profile for Donor #9623, during all times relevant herein, declared that James Christian Aggeles had a Bachelor's Degree, a Master's Degree, and that he was working towards his Ph.D. in artificial intelligence. The Xytex Corporation, and other Defendants, did absolutely nothing to investigate the educational claims

4

that James Christian Aggeles made when he applied to become a Xytex sperm donor. A simple phone call to the relevant universities would have sufficed, but the Xytex Corporation did nothing. Instead of investigating Mr. Aggeles' claims regarding his level of education, the Xytex Corporation decided to promote Donor #9623 as a highly educated person, with a 160 IQ – that was completely invented by the Xytex Corporation.

15.     Furthermore, the Xytex Corporation made no effort to investigate Mr. Aggeles' arrest and conviction history. Mr. Aggeles committed a residential burglary in 2005, which was **years before** any of the Plaintiffs in this case were sold his sperm by the Xytex Corporation. Mr. Aggeles spent 8 months in custody for that crime, and this information was all public record, easily accessible, and irrefutable. Nevertheless, the Xytex Corporation never made any effort to determine if it was selling the sperm of a convicted burglar to the unsuspecting persons that it had declared to protect, and fully inform. Instead of conducting an actual investigation into the claims made by James Christian Aggeles, Xytex promoted Donor #9623 as one of their best donors. Despite all of the evidence that was to the contrary, and publicly accessible, Xytex promoted James Christian Aggeles as a man of high integrity who was extremely intelligent, and incredibly educated.

16.     Despite all of this, the Xytex Corporation, and other Defendants, unceasingly promoted the sperm of Donor #9623, James Christian Aggeles, to such incredible extent that he now, by their own admission, is the biological father of at least 36 children. The mental illnesses that James Christian Aggeles suffers from are genetic, hereditary, and are passed from one generation to the next. Nevertheless, the Xytex Corporation has assumed no responsibility in that it has done absolutely nothing to warn affected parents that schizophrenia may develop in their children, and it has provided no help whatsoever to the parents who are now incurring extraordinary medical and financial expenses associated with the mental illnesses that are developing in their children. After this brief introduction, the factual allegations section will

5

now focus on what Xytex said it would do, what actually happened, and what Xytex has done since the truth about Donor #9623, James Christian Aggeles, was been fully exposed.

## II.     WHAT THE XYTEX CORPORATION SAID IT WOULD DO.

17.     Xytex International, through its subsidiary, the Xytex Corporation, sells human semen for the purposes of artificial insemination. The Xytex Corporation's website declares that it is "an industry leader in reproductive services with a commitment to unsurpassed quality controls," and that the donors' personal health and family history are carefully screened through a comprehensive medical process developed by the U.S. Centers for Disease Control and Prevention. Additionally, the website proclaims that the Corporation's "FDA-mandated screening and testing also ensures our donors' continued good health." The screening process is so thorough that a mere "1 percent of the men that inquire about being a donor candidate are evaluated," and, ultimately, "[f]ewer than 5 percent of the candidates become donors."

18.     The message that the Xytex Corporation presents regarding donor screening is exceedingly clear - Xytex does everything it can to carefully scrutinize the medical and social history of its donors, because, as Xytex alleges, it wants its "clients to make the most informed decision possible when selecting a donor." Xytex declares to us that it is "about people and creating families," and that it wants its purchasers "to receive the best possible match to a Xytex donor." This is the way Xytex presents itself to the general public.

## A.     THE REPRESENTATIONS MADE BY XYTEX REGARDING EXAMINATION AND QUALIFICATION OF SPERM DONORS.

19.     The website for the Xytex Corporation makes the following assertions, upon which all Plaintiffs relied, regarding the examination, screening, and qualification of its sperm donors:

(a)     Less than 5% of applicants actually become Xytex sperm donors.

6

(b)    All applicants go through the same rigorous qualification procedure.

(c)    Applicants are subjected to a thorough initial evaluation, and they are subsequently required to submit to "periodic updates throughout the year."

(d)    Trained counselors subject all applicants to extensive interviews that are focused on the applicants' personality, behavior and health.

(e)    Applicants undergo a comprehensive physical exam for physical abnormalities and evidence of infectious diseases, and samples of applicants' semen, urine, and blood are collected for laboratory analysis.

(f)    The Xytex medical director reviews all of the medical information in a process that takes about two months to complete.

(g)    The process of qualifying a donor is very intense and arduous, generating a lot of medical, psychological, genetic and social information about donors and their families.

(h)    Xytex does more than meet its professional and ethical responsibilities, as the quality of its clinical services are validated by state and national governmental agencies.

(h)    All Xytex donors "are enrolled in or have graduated from some of the country's premier universities and medical schools."

(i)    When a donor is participating in the semen donation program, he must submit to repeated lab testing for infectious diseases.

(j)    Every six months, donors are subjected to a physical examination, and they are required to update their medical history.

(k)    If there is any change in a donor's status, the donor's profile is updated with the new information.

(l)    When Xytex "learns new information about a donor (either from the donor or from a recipient of his semen) that is deemed medically significant by the Medical Director, a notice is sent to the inseminating doctor and to any patient who used semen from the donor."

7

20.    These statements from Xytex, included as part of paragraph 23 above, constitute some of, but not all, of the representations upon which Plaintiffs relied in choosing to purchase sperm from the Xytex Corporation.

## III.    WHAT XYTEX ACTUALLY DID – THE RECRUITEMENT AND PROMOTION OF DONOR #9623, JAMES CHRISTIAN AGGELES.

21.    Prior to even considering selling his sperm to Xytex, James Christian Aggeles had been hospitalized, as an adult, for mental health reasons on at least two separate occasions. During these hospitalizations, which sometimes lasted for more than two weeks, the medical staff at Atlanta Regional Hospital and Northwest Georgia Regional Hospital diagnosed Mr. Aggeles with psychotic schizophrenia, Narcissistic Personality Disorder, and significant grandiose delusions.  He was prescribed anti-psychotics, including Zyprexa and Depakote.

22.    Subsequent to these mental health hospitalizations and diagnoses, on October 18, 2000, James Christian Aggeles went to the Xytex office in order to make money selling his sperm.  After dropping out of school, he saw it as a fairly easy way to generate income between waiting tables and working as a janitor.  On his first visit, Mr. Aggeles told Defendant Mary Hartley, a Xytex representative, that he thought his IQ was about 130, but Mary Hartley suggested to him that he was a genius with an IQ of about 160.  She also told him that more educated donors did well selling their sperm, and that Xytex was used to donors with higher education.  James Christian Aggeles filled out a questionnaire . . . and from there on out, and for all times relevant herein, the profile for Xytex sperm Donor #9623 showed that he had an IQ of 160, multiple college degrees, a clean mental health history, and no criminal background.  Again, for all times relevant herein, Xytex or any of its employees or agents could have conducted a simple internet Google search and discovered through publicly accessible, indisputable, medical and professional documents that James Christian Aggeles was a diagnosed Schizophrenic, and a convicted felon with no education.

8

23.     Mr. Aggeles, by his own admission, lied about his mental health history, and his education when he filled out the Xytex questionnaire, but he was never questioned by anyone at Xytex. He was encouraged to tell lies, and bolster his intelligence and education levels by Defendant Mary Hartley. The questionnaire was falsified, and a physician gave Mr. Aggeles a 10-minute physical examination, during which no physical or mental health history was discussed. Approximately 2 weeks later, James Christian Aggeles, now Donor #9623, was approved to be a Xytex sperm donor, and he started donating sperm immediately – even though the Xytex website claims that the Xytex "medical director reviews all of the medical information in a process that takes about two months to complete."

24.     When Mr. Aggeles was a Xytex sperm donor, he was hospitalized for mental health reasons and arrested on numerous occasions. Publicly accessible documents unquestionably proved, before any of the Plaintiffs in this case were sold sperm from Mr. Aggeles, that he had a series of arrests for burglary, trespassing, DUI, and disorderly conduct. Also, before any of the Plaintiffs in this case were sold sperm from Mr. Aggeles, he had been hospitalized several times for severe suicidal outbursts and psychotic episodes. In 2002, Mr. Aggeles was placed on full Social Security Disability for his mental illnesses, he was diagnosed as having schizophrenic symptoms, and **he was found to be disabled**. During this time, Mr. Aggeles was selling his sperm to the Xytex Corporation, and Xytex was promoting him as a healthy, intelligent, and highly educated donor.

25.     From the year 2000 to the year 2016, and throughout that period, the Xytex Corporation, and other Defendants, relentlessly sold and promoted the sperm of Donor #9623, James Christian Aggles. As mentioned above, Mr. Aggeles is the father of at least 36 children due to his sperm being sold by the Xytex Corporation. The sperm of Donor #9623 was successfully inseminating women, and it therefore sold well. The Xytex Corporation had a commercial motive to sell Mr. Aggeles' sperm, and it pursued that motive by promoting and selling the sperm of Donor #9623 irrespective of whether or not he was a suitable sperm donor.

9

In these promotions, the Xytex Corporation, and all of the other Defendants referenced in this complaint, declared in their websites and materials, and in the statements that they made directly to all Plaintiffs, that James Christian Aggeles had the following characteristics:

- He had a Bachelor's Degree.

- He had a Master's Degree.

- He was working towards attaining his Ph.D. in Neuroscience Engineering.

- He had an IQ of 160.

- He had an impressive health history.

- He was one of their most popular donors.

- He was so popular that his sperm was rarely available.

- His child and adult photographs were authentic.

26.    The defendants made these representations to the plaintiffs, and the plaintiffs reasonably relied on them to their detriment, even though the defendants, notwithstanding their proclamations regarding their "unsurpassed quality controls," did absolutely nothing to verify the validity of the representations they were making about Donor #9623.

27.    In fact, the truth about Donor #9623 was very different from what the defendants represented about him.  In a recent interview, Donor #9623 stated that:

- He first went to the Xytex office in late 2000 in order to make money selling his sperm.

- When he first visited the Xytex office, he filled out a basic Questionnaire, but he was not asked any follow-up questions or any questions intended to verify his answers, and he was in the Xytex office for a grand total of 30 minutes.

- He was never asked for his medical records.

- He was never asked to sign a release for his medical records.

- He was never asked about his mental health history.

- He never spoke to a psychologist or psychiatrist representing Xytex.

10

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

- He specifically lied about his mental health history on the Questionnaire – as he had actually been hospitalized for mental health reasons on two separate occasions, and had been prescribed anti-psychotics, including Zyprexa and Depakote.

- He was never asked about his criminal history.

- He was never asked to provide a driver's license, or any other proof of identification.

- He lied about his education. He said that he had a BS from the University of Georgia, even though he did not; he said that he had a Masters Degree from the University of Georgia, even though he did not; he said that he was enrolled in a Ph.D. program in Artificial Intelligence, even though he was not.

- He went to the Xytex office in Atlanta to sell his sperm, and his main point-of-contact, for almost 14 years, was Defendant Mary Hartley.

- He told Mary Hartley that he thought his IQ was 130, and Mary Hartley told him that he was probably a genius with an IQ of 160. Mary Hartley told him that intelligent donors, with high levels of education, did well selling their sperm.

- He was surprised that Xytex never asked him to validate his educational claims.

- He was approved to become a sperm donor after his very first visit to the Xytex office.

- In 2014, after a lawsuit was filed against the Xytex Corporation that concerned Xytex sperm Donor #9623, Mr. Aggeles provided Xytex with fake graduation certificates, and Xytex accepted the fake graduation certificates.

- To his knowledge, Xytex has never made any attempt to verify his educational history in any way.

- He has been diagnosed with schizophrenia.

- He is a convicted felon.

- He attained his first, and only, college degree in May of 2015. Before that, he did not have any college degrees.

11

28.      Notwithstanding these facts, the Xytex Corporation promoted Donor #9623 as a highly educated, and extremely intelligent and thoughtful man, with a perfect health history. All of the above information was readily available to the Defendants, and easily accessible to them, and yet they utterly failed to conduct any form of investigation into the claims made by Donor #9623. For example, a simple phone call to the University of Georgia would have proven that Donor #9623 completely lied about his education on the Questionnaire. A simple Google search would have revealed Mr. Aggeles arrest history, and the publicly accessible documents that then showed, as early as 2002, that Mr. Aggeles had been arrested and hospitalized for mental health reasons, and that he had been diagnosed with serious mental illnesses. In failing to conduct any investigation whatsoever, while simultaneously peddling the notion that their procedures for donor screening were rigorous and comprehensive, the Defendants acted with completely callous disregard for the safety of all Plaintiffs, and the children that were conceived as a result.

29.      The credentials for Donor #9623, James Christian Aggeles, were completely falsified and incorrect, but Xytex, and other Defendants here, such as Mary Hartley and James Spradlin, also promoted him by telling Plaintiffs that Donor #9623 was one the most popular donors in the Xytex sperm donor panel, and they told Plaintiffs that Donor #9623 was so popular that his sperm was rarely available. The facts pertaining to each of the Plaintiffs are represented below.

## IV.    JANE DOE 1 & JANE DOE 2.

30.      Jane Doe 1 and Jane Doe 2 are a same-sex couple residing in San Francisco, California, who pursued the route of artificial insemination. Jane Doe 1 and Jane Doe 2 heard about the Xytex Corporation through some friends in San Francisco, and they started doing some research online, and came across the Xytex website, which looked very professional. They were impressed by the screening procedures described on the website, and they thoroughly scrutinized

12

the medical and social histories of the sperm donors on the website. The Xytex Corporation seemed to be the sperm bank with the most rigorous qualification standards.

31.     In order to confirm that the Xytex Corporation was actually conducting the sort of testing and screening of sperm donors that it claimed on its website, Jane Doe 1 and Jane Doe 2 called the Xytex Corporation directly. They spoke with Defendant Mary Hartley, and they asked her if she knew of any Xytex sperm donors that had a particularly impressive health and education history. In response to that question, Mary Hartley immediately singled out a specific Xytex sperm donor, Donor #9623, and stated that although he did not yet have a profile that had been published on the Xytex website, his sperm had already been used to successfully inseminate women. Mary Hartley also said that Donor #9623 was "ultra intelligent," and she said that he was "like a model." Mary Hartley told Jane Doe 1 and Jane Doe 2 that Donor 9623's sperm would be sold out as soon as his profile was published on the Xytex website. Moments after this in-depth phone conversation with Mary Hartley, Jane Doe 1 and Jane Doe 2 purchased sperm from Donor #9623 from the Xytex Corporation.

32.     Jane Doe 1 and Jane Doe 2 purchased the sperm from Donor #9623 through a credit card transaction with the Xytex Corporation, and the Xytex Corporation then sent the sperm purchased from Donor #9623 to San Francisco, California.

33.     Subsequently, in San Francisco, California, licensed medical professionals introduced sperm from Donor #9623 into Plaintiff Jane Doe 1 in an artificial insemination procedure. Approximately nine months later, Jane Doe 1 gave birth to P.S. in San Francisco, California. P.S. is now nine years old. After the procedure, Jane Doe 1 and Jane Doe 2 still had vials of sperm from Donor #9623 remaining, and they decided to have the sperm stored in San Francisco, California, so that it could be used again if they decided to have another child in the future.

34.     Thereafter, on April 19, 2015, Jane Doe 1 and Jane Doe 2 saw an article on the website for the Associated Press that discussed a lawsuit that had been filed against the Xytex

13

Corporation. They discovered that their sperm donor, Xytex Donor #9623, was a mentally ill felon. They learned that Donor #9623 was schizophrenic, which is genetic and hereditary, thereby exposing their child to the most debilitating of mental illnesses. They learned that Donor #9623 had dropped out of college, and that he held no degrees whatsoever. They learned that Donor #9623 had pled guilty to residential burglary – a serious and violent crime, and a felony in most states. They learned that the photos of Donor #9623 had been altered to remove a large facial mole. All of this information was easily accessible through a completely rudimentary online search, as Donor #9623, his mother, and his father provided it all on websites such as Facebook, YouTube, and elsewhere.

35.     Subsequently, on January 11, 2016, Jane Doe 1 sent an email to Ronda Drake, an agent of the Xytex Corporation, and she expressed concern regarding the fact that Donor #9623 was a diagnosed schizophrenic. In response, Ms. Drake said that she was not aware "of any reported medical issues," related to the donor "you have in storage," Donor #9623.

36.     Additionally, on January 11, 2016, Jane Doe 1 received an email from Defendant J. Todd Spradlin, the Chief Medical and Laboratory Director for the Xytex Corporation, in which Dr. Spradlin said that the lawsuit regarding Donor #9623 that had been filed against Xytex had been dismissed, and that he had "received no information to confirm that Donor 9623 has schizophrenia." Defendant Spradlin also said, in the same email, that it "would be irresponsible of Xytex to notify clients of unsubstantiated claims." Defendant Spradlin made these statements despite the fact that publicly accessible, irrefutable, verified medical documents unquestionably proved that Donor #9623, James Christian Aggeles, was a diagnosed schizophrenic. Thus, even in January of this year, 2016, years after the Xytex Corporation had been alerted to publicly accessible documents that proved that Donor #9623 had been diagnosed with schizophrenia, Defendant J. Todd Spradlin, an agent of defendants herein, told Jane Doe 1 that he had no information to confirm that Donor #9623 was schizophrenic. Jane Doe 1 was then, in January of 2016, storing sperm from Donor #9623 for the purposes of artificial

14

insemination, and it appears that the Chief Medical Director for the Xytex Corporation, Defendant J. Todd Spradlin, did not have any concerns about sperm from Donor #9623 being used for the purpose of artificial insemination. Again, this occurred years after Xytex was exposed to irrefutable public documents that prove that Donor #9623 is a diagnosed schizophrenic, and a convicted felon.

## DAMAGES

37.     Recently, Jane Doe 1 and Jane Doe 2 have come to discover that their child, P.S., has needed counseling. Jane Doe 1 and Jane Doe 2 have spent a significant amount of money on such counseling. Additionally, Jane Doe 1 and Jane Doe 2 have each attended conferences regarding best practices for parents in their situation, and they have unquestionably incurred a profound amount of stress and worry.

38.     As a further result of the conduct of all Defendants, set forth hereinabove, Jane Doe 1 and Jane Doe 2 suffered injuries in the form of physical and emotional pain and suffering.

39.     As an additional result of the conduct of all Defendants, set forth hereinabove, Jane Doe 1 and Jane Doe 2 have been required to, and will be required to, expend funds to evaluate and care for their child to ensure that should she become schizophrenic, she will have the best care possible, and that, should her schizophrenia develop, she will be diagnosed and treated so as to prevent further injury to Jane Doe 1 and Jane Doe 2.

## V.     WHAT XYTEX HAS DONE SINCE THE TRUTH ABOUT JAMES CHRISTIAN AGGELES HAS BEEN EXPOSED.

40.     Although the Xytex website declares that the Corporation is all about people and creating families, and although it asserts that Xytex informs sperm recipients when something significant about their Xytex sperm donor has come to light, Xytex has not told the truth about James Christian Aggeles to anyone who received his sperm.

15

41.      In fact, after Xytex was alerted to publicly accessible documents that unquestionably proved that James Christian Aggeles was a schizophrenic with an extensive arrest history, the Xytex Corporation and its representatives and employees continued to sell and promote sperm from Donor #9623. Defendant J. Todd Spradlin, the Chief Medical and Laboratory Director for Xytex, stated in an e-mail to Plaintiff Jane Doe 1, on **January 11, 2016**, that he had "no information to confirm that Donor 9623 has schizophrenia." The Xytex Corporation, and other Defendants here, have all refused to concede the truth about James Christian Aggeles, and they have recklessly pursued their commercials motives without any consideration for the safety of the Plaintiffs, or their children.

42.      Not only has the Xytex Corporation refused to disseminate the truth about James Christian Aggeles, and help the recipients of his sperm, it continued to sell the sperm of Donor #9623 after the his arrest history and mental illnesses came to light. All the while, publicly accessible, irrefutable documents unquestionably proved that Donor #9623 was a convicted burglar with a series of mental health illnesses. Nevertheless, the Xytex Corporation has recklessly pursued its commercial motives without any consideration for the lives it was destroying, and this was done in conscious disregard for the safety of the public, and the persons who purchased sperm from Donor #9623.

43.      Rather than help the persons who received sperm from Donor #9623, and their children who were conceived as a result of the sperm received from Donor #9623, the Xytex Corporation has vowed to "vigorously defend itself." If the Xytex Corporation, and all other Defendants here, are never held accountable for their reckless, callous, and injurious behavior, they will continue to misrepresent the truth and destroy innocent peoples' lives with impunity.

16

## FIRST CAUSE OF ACTION
### (Intentional Misrepresentation - Fraud)
(Against ALL Defendants)

44.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

45.     The Xytex Corporation, and other Defendants herein, made representations to Plaintiffs Jane Doe 1 and Jane Doe 2 about Xytex sperm Donor #9623 that were presented to the Jane Doe 1 and Jane Doe 2 as true.

46.     The representations made by the Xytex Corporation, and other Defendants herein, were false.

47.     The Xytex Corporation, and other Defendants herein, knew that the representations were false when they were made, or the Xytex Corporation, and other Defendants herein, made the representations recklessly and without regard for their truth.

48.     The Xytex Corporation, and other Defendants herein, intended that the Plaintiffs rely on their representations in purchasing sperm from Xytex sperm Donor #9623.

49.     Jane Doe 1 and Jane Doe 2 reasonably relied on the representations made by the Xytex Corporation, and other Defendants herein, and were harmed as a result.  Jane Doe 1 and Jane Doe 2's reliance on the representations made by the Defendants was a substantial factor in causing their harm.

50.     All Defendants, and each of them, acted fraudulently, and with malice and oppression and the Plaintiffs are thereby entitled to punitive damages.

WHEREFORE, the Plaintiffs pray for judgment against all DEFENDANTS as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)
(Against ALL Defendants)

51.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

17

52.     The Xytex Corporation, and other Defendants herein, made representations to Plaintiffs Jane Doe 1 and Jane Doe 2 about Xytex sperm Donor #9623 that were presented to the Jane Doe 1 and Jane Doe 2 as true.

53.     The representations made by the Xytex Corporation, and other Defendants herein, were false.

54.     The Xytex Corporation, and other Defendants herein, had no reasonable grounds for believing that the representations were true when they were made.

55.     The Xytex Corporation, and other Defendants herein, intended that the Plaintiffs rely on their representations in purchasing sperm from Xytex sperm Donor #9623.

56.     Jane Doe 1 and Jane Doe 2 reasonably relied on the representation made by the Xytex Corporation, and other Defendants herein, and were harmed as a result.  Jane Doe 1 and Jane Doe 2's reliance on the representations made by the Defendants was a substantial factor in causing their harm.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### THIRD CAUSE OF ACTION
#### (Products Liability - Strict Liability)
(Against ALL Defendants)

57.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

58.     The semen that was manufactured, and/or distributed, and/or sold or supplied by the Xytex Corporation, and other Defendants herein, was defective and unsafe at the time it was distributed and used by the Plaintiffs because it contained genetic material about which no warnings were given.

18

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

59.    The defective semen harmed Jane Doe 1 and Jane Doe 2 even though Jane Doe 1 and Jane Doe 2 used the semen as intended, in a foreseeable manner, and in a manner in which the defendants knew it would be used.

60.    The semen's defect was a substantial factor in causing the harm incurred by Jane Doe 1 and Jane Doe 2.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### FOURTH CAUSE OF ACTION
### (Products Liability - Negligence)
(Against ALL Defendants)

61.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

62.    The Xytex Corporation, and other Defendants herein, at all times relevant, had a duty to properly test, analyze, inspect, research, distribute, evaluate, review, recommend and provide proper warnings for the sperm that was sold to Plaintiffs Jane Doe 1 and Jane Doe 2.

63.    The Xytex Corporation, and other Defendants herein, at all times relevant, knew that the product was of such a nature that if it was not properly tested, inspected, labeled, distributed, reviewed, evaluated, marketed, promoted, and recommended, it was likely to injure users.

64.    The Xytex Corporation, and other Defendants herein, breached their duty to Plaintiffs Jane Doe 1 and Jane Doe 2 by negligently and carelessly recommending, promoting, failing to test, failing to review, failing to evaluate, and failing to inspect the semen that caused injuries and damages to Jane Doe 1 and Jane Doe 2.

65.    The negligence of the Xytex Corporation, and other Defendants herein, was a substantial factor in causing the harm incurred by Jane Doe 1 and Jane Doe 2.

19

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## FIFTH CAUSE OF ACTION
### (Breach of Express Warranty)
(Against ALL Defendants)

66.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

67.    The Xytex Corporation, and other Defendants herein, made representations about the quality of the semen being sold to Jane Doe 1 and Jane Doe 2, and presented themselves as experts in the determination of quality and reliability of the said semen, and thereby created a warranty through their oral and written representations.  The Defendants also promised to inform Jane Doe 1 and Jane Doe 2 of any significant information learned or acquired about the semen, and the respective semen donor, Xytex sperm Donor #9623.

68.    The semen sold and distributed by the Xytex Corporation, and other Defendants herein, was not at all consistent with, or reflective of, the representations that had been made by the Defendants.

69.    Jane Doe 1 and Jane Doe 2 took reasonable steps to notify the Defendants that the semen was not what it was represented to be.

70.    The Xytex Corporation, and other Defendants herein, failed to provide Jane Doe 1 and Jane Doe 2 with significant information that has been learned or acquired about Xytex sperm Donor #9623 as promised.

71.    The failure of the sperm to be as represented was a substantial factor in causing the harm incurred by Jane Doe 1 and Jane Doe 2.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

20

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

## SIXTH CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)
(Against ALL Defendants)

72.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

73.    Jane Doe 1 and Jane Doe 2 purchased semen from Defendant Xytex Corporation.

74.    The Xytex Corporation, and other Defendants herein, at the time of purchase, were in the business of selling such goods, or by their occupations, held themselves out as having special knowledge or skill regarding such goods.

75.    The semen that was sold to Jane Doe 1 and Jane Doe 2 by the Xytex Corporation, and other Defendants herein, was not of the same quality as is generally acceptable in the trade, and it was not fit for the ordinary purposes for which such goods are used.

76.    Jane Doe 1 and Jane Doe 2 took reasonable steps to notify the Xytex Corporation, and other Defendants herein, within a reasonable time that the semen did not have the expected quality.

77.    Jane Doe 1 and Jane Doe 2 were harmed as a result, and the failure of the semen to have the expected quality was a substantial factor in causing the harm incurred by Jane Doe 1 and Jane Doe 2.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### (Battery)
(Against ALL Defendants)

78.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

21

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

79.     The Xytex Corporation, and other Defendants herein, perpetrated a battery upon Jane Doe 1. The Defendants, by selling the sperm of a person who was not the person defendants said he was, and not the person all Plaintiffs understood him to be, thereby caused Jane Doe 1 to be inseminated with the semen of a person to whom she would not have consented. This amounts to a nonconsensual, offensive contact, and is thus, a battery.

80.     In committing the said battery, the Xytex Corporation, and other Defendants herein, acted intentionally and with malice and with conscious disregard for the health and safety of said Plaintiffs and the general public, thereby entitling said Plaintiffs to punitive damages.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## EIGHT CAUSE OF ACTION
### (Negligence)
(Against ALL Defendants)

81.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

82.     In doing the acts herein alleged, the Xytex Corporation, and other Defendants herein, acted carelessly and negligently and caused all Plaintiffs injuries and damages thereby.

WHEREFORE, Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## NINTH CAUSE OF ACTION
### (Specific Performance)
(Against ALL Defendants)

83.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

84.     Plaintiffs are entitled to specific performance because there was (1) a legally enforceable agreement between Jane Doe 1 and Jane Doe 2 and the Xytex Corporation, which was sufficiently certain in its terms; there was (2) adequate consideration for the agreement, and

22

it was a just and reasonable agreement; the (3) Plaintiffs, and each of them, tendered their performances by purchasing human sperm from the Xytex Corporation; the (4) Defendants breached the agreement because they have failed to honor to their promise to disseminate, to sperm purchasers, significant information that is discovered about a donor; and the (5) Plaintiffs have no adequate remedy at law because, in order to effectively treat and care for their children, they need to know as much as possible about James Christian Aggeles, Donor #9623. However, the Plaintiffs cannot effectively treat their children while the Defendants refuse to disseminate what they actually know to be true about James Christian Aggeles.

85. Before Jane Doe 1 and Jane Doe 2 purchased sperm from the Xytex Corporation, the Xytex Corporation agreed to disseminate significant new information that it learned or discovered about a donor. Notwithstanding this promise, and the facts that have come to light regarding Xytex Donor #9623's mental health issues, criminal issues, and lack of secondary education, the Xytex Corporation has repeatedly refused to disseminate any of the information that can easily be verified by publicly accessible documents.

86. Thus, the Defendants have breached the agreement, and because the Plaintiffs have no adequate remedy at law, the Defendants should be required to perform their obligations under the legally enforceable agreement and disseminate what they know about James Christian Aggeles to any and all purchasers of sperm that came from Xytex Donor #9623.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### TENTH CAUSE OF ACTION
#### (False Advertising)
(Against ALL Defendants)

87. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

23

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

88.     The Xytex Corporation, and other Defendants herein, promoted misrepresentative information about the nature, characteristics, and qualities of Xytex Donor #9623, the Plaintiffs relied on that misleading information in purchasing sperm from James Christian Aggeles, Donor #9623, and in using it in an artificial insemination procedure.

89.     The Xytex Corporation, and other Defendants herein, knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading.

90.     The Plaintiffs were injured by these deceptive advertising practices, and now seek relief for their injuries.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION
### (California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*)
(Against ALL Defendants)

91.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

92.     The conduct of the Xytex Corporation, and the other Defendants herein, violated the California Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200, *et seq*.

93.     Plaintiffs allege that the unfair and unlawful business practices complained of herein are and were the regular business practice of Defendants.

94.     Through Defendants' failure to provide truthful information about the semen they sold and/or advertised or distributed to Plaintiffs Jane Doe 1 and Jane Doe 2, Defendants have engaged in, and continue to engage in, unlawful and unfair business practices in violation of the UCL, and have caused Plaintiffs Jane Doe 1 and Jane Doe 2 to suffer harm, and to lose money. Defendants' actions described herein constitute an unfair business practice or act within the meaning of the UCL.

24

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

95.     Injunctive relief pursuant to California Business and Professions Code Section 17203 is necessary to prevent Defendants from continuing to engage in unfair business practices as alleged in this Complaint. Defendants and/or persons acting in concert with Defendants have done, are now doing, and will continue to do or cause to be done, the illegal acts alleged in this Complaint, unless restrained and enjoined by this Court. Unless the relief prayed for below is granted, a multiplicity of actions will result. Plaintiffs have no plain, speedy, or adequate remedy at law, and the continuing violation of law by Defendants will cause great and irreparable damage to Plaintiffs unless Defendants are immediately restrained from committing further illegal acts.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

<div align="center">

**TWELFTH CAUSE OF ACTION**
**(Wrongful Birth)**
(Against ALL Defendants)

</div>

96.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

97.     The Xytex Corporation, and other Defendants herein, negligently failed to warn Jane Doe 1 and Jane Doe 2 of the risk that P.S. would be born with a genetic impairment or disability.

98.     The Xytex Corporation, and other Defendants herein, negligently failed to perform the appropriate tests, and/or provide the appropriate advice, that would more likely than not have disclosed the risk that P.S. would be born with a genetic impairment/disability.

99.     Resultantly, Jane Doe 1 and Jane Doe 2 gave birth to a child, P.S., born with genetic impairments and/or disabilities.

100.    If Jane Doe 1 and Jane Doe 2 had known of the genetic impairment(s) and/or disability(s) that was/were likely to develop in their child, they would not have conceived P.S.

<div align="center">25</div>

101.    The negligence of the Xytex Corporation, and other Defendants herein, was a substantial factor in causing Jane Doe 1 and Jane Doe 2 to have to pay extraordinary expenses to care for P.S.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### PRAYER FOR RELIEF

WHEREFORE PLAINTIFFS SEEK RELIEF AS FOLLOWS:

1.    Pain and suffering according to proof;

2.    Financial losses according to proof;

3.    Attorneys fee;

4.    Costs of suit;

5.    Medical Monitoring Fund;

6.    Injunctive Relief; and

7.    Punitive Damages

### JURY DEMAND

Plaintiffs also hereby demand a jury trial in this action.


DATED: April 18, 2016

HERSH & HERSH
A Professional Corporation


NANCY HERSH
BRENDAN GANNON
Attorneys for Plaintiffs

26

COMPLAINT FOR DAMAGES; JURY TRIAL DEMANDED

1  NANCY HERSH, State Bar No. 49091
2  KATE HERSH-BOYLE, State Bar No. 278864
   BRENDAN GANNON, State Bar No. 303410
3  HERSH & HERSH
   A Professional Corporation
4  601 Van Ness Avenue, Suite 2080
   San Francisco, CA 94102-6396
5  (415) 441-5544

6
   Attorneys for Plaintiffs
7  JANE DOE 1 & JANE DOE 2

8          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9           **IN AND FOR THE COUNTY OF SAN FRANCISCO**

10

11

12  JANE DOE 1 & JANE DOE 2, individuals,    )    Case No.: CGC-16-551538
                                             )
13                      Plaintiffs,          )    **REDACTED NOTICE OF MOTION AND**
                                             )    **MOTION TO SEAL PORTIONS OF THE**
14  vs.                                      )    **COURT'S RECORD**
                                             )
15                                           )    **Reservation No.: 04260613-04**
    XYTEX CORPORATION, a Georgia             )
16  Corporation; XYTEX CRYO                  )    Date: June 13, 2016
    INTERNATIONAL LTD., a Georgia            )    Time: 9:30 a.m.
17  Corporation; MARY HARTLEY, an            )    Dept.: 302
    individual; J. TODD SPRADLIN, an         )    Trial Date: None Set
18  individual; and DOES 1-25, inclusive,    )
                                             )    Complaint filed: April 18, 2016
19                                           )
                                             )
20                      Defendants.          )
                                             )
21

22

23          **TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD**

24          PLEASE TAKE NOTICE that on June 13, 2016, at 9:00 a.m., in Department 302 of the

25  above-entitled court, located at 400 McAllister Street, San Francisco, California, Plaintiffs

26  "JANE DOE 1" and "JANE DOE 2" ████████████████████████████ will move the

27  Court for an order sealing portions of the Court's file in this action.

28

                                             1

                NOTICE OF MOTION TO SEAL PORTIONS OF THE COURT'S RECORD

The Motion is based upon this Notice, the Memorandum of Points & Authorities in Support of Motion to Seal Portions of the Court's File, Documents Filed "Conditionally Under Seal," Declaration of Nancy Hersh, and all other pleadings and records on file herein, and such argument and evidence as may be offered at the time of the hearing upon the Motion. This motion is made pursuant to California Rules of Court, Rules 2.550 and 2.551.

Additionally, Plaintiffs have filed concurrently herewith a Motion to Proceed as Anonymous Plaintiffs. In that motion, Plaintiffs have specifically requested that they be permitted to proceed as JANE DOE 1 and JANE DOE 2.

DATED: May 13, 2016

                                    HERSH & HERSH
                                    A Professional Corporation


                                    NANCY HERSH
                                    Attorneys for Plaintiffs

2

**PROOF OF SERVICE**
*Jane Doe 1 and Jane Doe 2 v. Xytex, et al.*
**San Francisco Superior Court Case #CGC-16-551-538**

I, Lauren Diaz, declare: I am employed in the City and County of San Francisco, California. I am over the age of 18 years and not a party to the within action or proceeding; my business address is 601 Van Ness Avenue, Suite 2080, San Francisco, California 94102-6388.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On **May 13, 2016**, I served a true copy of the following documents:

**1. Redacted and Non Redacted Notice of Motion and Motion to Seal Portions of the Court's Record**

**2. Redacted and Non Redacted Declaration of Nancy Hersh in Support of Plaintiffs' Motion to Seal Portions of the Court's Record**

**3. Redacted and Non Redacted Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Seal Portions of the Court's Record**

**4. Redacted and Non Redacted [Proposed] Order on Plaintiffs' Motion to Seal Portions of the Court's Record**

**5. Notice of Payment of Court Reporters Fees**

in said action by placing a true copy thereof, enclosed in a sealed envelope, each envelope addressed as follows:

| | |
|---|---|
| John Supple, Esq.<br>J SUPPLE LAW<br>2330 Marinship Way, Suite 250<br>Sausalito, CA 94965<br>415-366-5533<br>Fax: 415-480-6301<br>Email: jsupple@jsupplelaw.com<br>*Attorneys for Defendants Xytex Corporation,*<br>*Xytex Cryo International LTD., Mary*<br>*Hartley, and J. Todd Spradlin* | |

__X__ **(BY MAIL)** I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid in San Francisco, California.

**X**    **(BY ELECTRONIC SERVICE)** Based on a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed above.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on **May 13, 2016**, at San Francisco, California.

LAUREN DIAZ

-2-

NANCY HERSH, State Bar No. 49091
KATE HERSH-BOYLE, State Bar No. 278864
BRENDAN GANNON, State Bar No. 303410
HERSH & HERSH
A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102-6396
(415) 441-5544

Attorneys for Plaintiffs
JANE DOE 1 & JANE DOE 2

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JANE DOE 1 & JANE DOE 2, individuals,<br><br>                    Plaintiffs,<br><br>vs.<br><br>XYTEX CORPORATION, a Georgia Corporation; XYTEX CRYO INTERNATIONAL LTD., a Georgia Corporation; MARY HARTLEY, an individual; J. TODD SPRADLIN, an individual; and DOES 1-25, inclusive,<br><br>                    Defendants. | Case No.: CGC-16-551538<br><br>**REDACTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO SEAL PORTIONS OF THE COURT'S RECORD**<br><br>**Reservation No.: 04260613-04**<br><br>Date: June 13, 2016<br>Time: 9:30 a.m.<br>Dept.: 302<br>Trial Date: None Set<br><br>Complaint filed: April 18, 2016 |

## I.    INTRODUCTION

Plaintiffs "JANE DOE 1" and "JANE DOE 2" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

filed their Complaint on April 18, 2016, and have filed a Motion to Proceed as Anonymous

Plaintiffs "JANE DOE 1" and "JANE DOE 2" contemporaneously with this motion.  Plaintiffs

are seeking that this Court order that the Plaintiffs' Motion to Proceed as Anonymous Plaintiffs,

1

and Order thereon, and the Court transcript from this hearing, and the hearing on the Motion to

Proceed as Anonymous Plaintiffs, and any documents that would reveal Plaintiffs' identities, or

any other information that would identify them or their child, be sealed.  This motion is brought

pursuant to California Rules of Court Rules (hereinafter "Rules" or "Rule") 2.550 and 2.551 and

*NBC Subsidiary (KNBC TV) v. Superior Court* (1999) 20 Cal.4th 1178, 1208.

## II. RELEVANT FACTS

Plaintiffs filed their Complaint on April 18, 2016 as JANE DOE 1 and JANE DOE 2

against Defendants Xytex Corporation, Xytex Cryo International LTD, Mary Hartley, and J.

Todd Spradlin ("Xytex Defendants"). *See* Plaintiffs' Complaint ("Compl.") which is attached as

Exhibit A to the Declaration of Nancy Hersh ("Hersh Decl.") filed in support of Plaintiffs'

Motion to Proceed Anonymously filed contemporaneously herewith. Plaintiffs alleged therein

that they reside in San Francisco, California and have one child, P.S., who was conceived as a

result of their purchase of semen from Defendant Xytex Corporation. Hersh Decl., Exhibit A,

Comp., ¶¶ 1 and 2. Plaintiffs' Complaint pleads, in great detail, factual allegations and causes of

action against the Xytex Defendants for Intentional Misrepresentation, Negligent

Misrepresentation, Products Liability – Strict Liability, Products Liability – Negligence, Breach

of Express Warranty, Breach of Implied Warranty, Battery, Negligence, Specific Performance,

False Advertising, Unfair Business Practices and Wrongful Birth. The allegations arise out of the

Xytex Defendants' sale of sperm from a Xytex Donor, Donor #9623, a diagnosed schizophrenic

and a convicted felon, who Defendants had assisted in falsifying his donor profile, upon which

Plaintiffs relied in selecting the sperm that they would then use to conceive their child, and

thereby misleading Plaintiffs as well as other parents and inducing them to purchase sperm.

Hersh Decl., Exh. A, Compl., ¶¶ 12-14.

2

At the time Plaintiffs purchased the sperm with which they conceived their child, Xytex Corporation promoted the sperm Donor #9623, James Christian Aggeles, as a genius, with an IQ of 160, with multiple college degrees, a clean mental health history, and no criminal background. *Id.*, ¶ 22.   However, the truth was that Mr. Aggeles did not have even a college degree when he applied to become a donor, had a very clear and distinct history of diagnoses with Schizophrenia, Narcissistic Personality Disorder, and drug induced psychotic disorder, as well as significant grandiose delusions, and he had an arrest and conviction history for burglary. *Id.*, ¶ 13. While simple online research would have revealed as much, Defendant Xytex Corporation and the Xytex Defendants did nothing to investigate the donor's claims concerning his background, education, mental health, or legal history. *Id.*, ¶ 14. Further, Defendant Mary Hartley spoke to the donor at the time he was applying to be a donor, and he informed her that he thought his IQ was about 130, and Defendant Hartley suggested that he was a genius with an IQ of 160, informing him that more educated donors did well selling their sperm. *Id.*, ¶ 22. From 2000 to 2016, Xytex Corporation and the other Xytex Defendants sold and promoted the sperm of Donor # 9623, making false representations including, but not limited to, representations that the donor had a Bachelor's degree, a Master's Degree, was working towards his Ph.D. in Neuroscience Engineering, had an IQ of 160, an impressive health history, was one of their most popular donors, was so popular that his sperm was rarely available, and that his photographs (although doctored) were authentic. *Id.*, ¶¶ 25-27.

Plaintiffs, a same-sex couple residing in San Francisco, pursued artificial insemination and heard about Xytex through friends. *Id.*, ¶ 30. After doing online research, they found Xytex Corporation and were impressed by its representations concerning its screening procedures, including that Xytex Corporation scrutinized the medical and social histories of the sperm

3

donors. *Id.*, ¶ 30. Plaintiffs even spoke to Defendant Mary Hartley to confirm Xytex

Corporation's representations concerning screening and to ask if Defendant Mary Hartley knew

of any donors with impressive health and education histories. *Id.*, 31. Defendant Mary Hartley

singled out Donor #9623, complimenting him and encouraging their purchase of his sperm,

saying he was "ultra intelligent" and "like a model." Hersh Decl., Exh. A, Compl. at ¶ 31.

Plaintiffs purchased his sperm. *Id.*, ¶ 31. Jane Doe 1 was thereafter artificially inseminated with

the sperm and months later gave birth to P.S., who is now nine years old. *Id.* ¶ 33.

On April 19, 2015, Jane Doe 1 and Jane Doe 2 saw an article on the Associated Press that

discussed a lawsuit that had been filed against Xytex Corporation concerning misrepresentations

by Xytex to purchasers of Donor #9623's sperm, specifically that Donor #9623 was mentally ill

and a felon and that he had dropped out of college, and that his photos had been doctored. *Id.* ¶

34. In their Complaint, Plaintiffs seek damages, including, but not limited to, pain and suffering,

financial losses, attorney's fees, costs of suit and medical monitoring for their child, who is

genetically predisposed to mental illness. *Id.*, *See Prayer for Relief* at p. 26. Defendants

confirmed that the Xytex sperm donor involved, Donor #9623, has at least 36 offspring as a

result of his sperm donation. *Id.* ¶ 16.

### III.   ARGUMENT

### A.   STANDARD AND PROCEDURE FOR SEALING DOCUMENTS

The procedures and standards for sealing documents by Court order are set forth in

California Rules of Court Rule 2.550, and Rule 2.551.  These Rules are based upon the case of

*NBC Subsidiary (KNBC-TV) v. Superior Court*, in which the court set forth five specific findings

that must be made before an order sealing a document is granted.  Those five findings have been

codified at Rule 2.550(d), subsections (1) through (5):

4

(1)    There exists an overriding interest that overcomes the right of public access to the record;

(2)    The overriding interest supports sealing the record;

(3)    A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed;

(4)    The proposed sealing is narrowly tailored; and

(5)    No less restrictive means exist to achieve the overriding interest.

These factors are addressed as follows:

**1.    There Exists an Overriding Interest that Overcomes the Right of the Public to Access the Record.**

This case involves a minor child, the child of Plaintiffs herein, and issues regarding the child's conception and genetics, including the Plaintiffs' purchase and use of sperm from Defendants, which was sperm from a specific donor, who Plaintiffs recently discovered has a history of mental illness and a criminal background. This case involves issues and matters that are of an extremely personal and sensitive nature, such as Plaintiffs' individual reproductive decisions, their sperm donor's mental illness diagnoses and criminal arrest history, and their child's health and wellness, including the welfare of their child as the child develops and matures. (*See* Plaintiff's Complaint, which is attached as "Exhibit A" to the Declaration of Nancy Hersh in support of Plaintiffs' Motion to Proceed as Anonymous Plaintiffs, which is filed concurrently herewith.)

In addition, Plaintiffs know that the media will take interest in this case as the media has already taken interest in the particular facts of this case without knowing the names of Plaintiffs or any identifying information. The facts of this case lend themselves to media scrutiny, and

Plaintiffs want to ensure that their child's privacy and dignity are respected and preserved, as well as their own, which is their choice. The media has expressed great interest in the case, and Plaintiffs are therefore legitimately concerned that if their true names are exposed, they, and their nine-year-old child, will have their privacy completely undermined, and will be subjected to extreme ridicule, and personal embarrassment. Plaintiffs do not wish their employers, family members, neighbors, friends, their child's school or classmates, or any future acquaintances, personal or professional, to have access to this most intimate information about Plaintiffs and their child. They also want to protect their child from the onslaught of media attention that they would likely receive as a result of the case. Their child is a minor, under the age of ten. It is not in the child's best interests that her life be affected any more than it already has by the events that have transpired.

Precedent has clearly established that parties may proceed anonymously when nondisclosure of their identity is necessary to protect them from injury, ridicule, or personal embarrassment. *United States v. Doe* (1981) 655 F.2d 920, 922 n.1. This rule, allowing parties to proceed anonymously, "simply recognizes that privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed . . . to proceed anonymously." *James v. Jacobsen* (1993) 6 F.3d 233, 238. In this case, in light of the media's exposure of the case, and Plaintiffs' legitimate privacy concerns, Plaintiffs should be allowed to proceed anonymously, and the Court should seal the identifying portions of the Court's record.

Furthermore, Defendants are aware of Plaintiffs' true identities. Plaintiffs have revealed their true names to Defendants by filing, conditionally under seal, un-redacted copies of this motion and a motion to proceed anonymously. These un-redacted copies contain Plaintiffs' true names. Defendants will be served with all copies of motions. Thus, Defendants are aware of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO SEAL PORTIONS OF THE COURT'S RECORD

Plaintiffs' true identities. Therefore, there is no prejudice to Defendants or their counsel by sealing the un-redacted copies of motions or anything else that may reveal the identities of Plaintiffs and their child.

Additionally, there is no prejudice to the public by naming Plaintiffs as "JANE DOE 1" and "JANE DOE 2", and by sealing their motion seeking to be named anonymously and any other documents that may be filed in the case and which reveal their identities or the identity of their child. Allowing Plaintiffs to proceed with 'Jane Doe' designations, and sealing the portions of the Court's record that expose Plaintiffs' identities will not in any way obstruct the public's view of the issues, or the court's performance in resolving them. *Doe v. Stegall* (1981) 653 F.2d 180, 185. Party anonymity will not at all undermine the public's access to the case. The complaint was publicly filed. The public will have access to which sperm bank and which individuals were involved in the conduct at issue, as well as the facts of the case, excluding the identities of the Plaintiffs and their child. Therefore, the public's right to information is not limited.

The facts surrounding this case have already received a great deal of coverage in the media. The public has been exposed to the facts of the case. The public will not be prevented from scrutinizing the issues in this case. Thus, allowing Plaintiffs certain privacy and permitting them to proceed under 'Jane Doe' designations while sealing identifying portions of the Court's record, will not result in any prejudice to the public. For example, in *Roe v. Wade*, a party was allowed to proceed using a fictitious name, but it cannot be said with any credibility whatsoever that the public has not been able to access the issues in that case, or scrutinize our legal system's resolution of those issues. *Roe v. Wade* (1973) 410 U.S. 113.

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO SEAL PORTIONS OF THE COURT'S RECORD

Thus, the public will not incur any prejudice if the Court seals portions of the record and allows Plaintiffs to proceed anonymously, and neither will Defendants because they know Plaintiffs' true names.  Therefore, because there will be no prejudice to Defendants or the public, the overriding privacy concerns of Plaintiffs overcome the right of the public to demand exposure of Plaintiffs' identities. This Court has an overriding interest, on behalf of JANE DOE 1 and JANE DOE 2 and their minor child, P.S., for sealing the Motion to Proceed As Anonymous Plaintiffs "JANE DOE 1" and "JANE DOE 2", as well as any portions of the Court's record that identify Plaintiffs, including any hearing transcripts that exist related to this Motion or the Motion to Proceed as Anonymous Plaintiffs.

**2.      The Overriding Interest Supports Sealing the Record.**

There is an overriding privacy interest in preventing the disclosure of Plaintiffs' identities to the public.  In order to obtain the relief requested in their Motions, and in order to provide Defendants, and the Court, with Plaintiffs' true identities, Plaintiffs have been required to file documents which state their full names.  Therefore, these Motions, their supporting documents, and the Orders approving them, and any documents that identify Plaintiffs' true names must be filed under seal in order to further Plaintiffs' overriding privacy interest and the Court's overriding interest.  In addition, any future documents to be filed herein that would reveal Plaintiffs' identities or any other information which would identify Plaintiffs or their minor child, such as their names, or their child's name and date of birth, must be sealed accordingly.

**3.      A Substantial Probability Exists that the Overriding Interest Will be Prejudiced if the Record is Not Sealed.**

If the Motion to Proceed as Anonymous Plaintiffs and the instant motion are not granted, the public will have easy access to the true identities of Plaintiffs.  Given the media interest in

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO SEAL PORTIONS OF THE COURT'S RECORD

the case, it is inevitable that the media will seek out the publicly accessible pleadings, and then widely disseminate the identities of Plaintiffs, and potentially, even the identity of their minor child, who is just nine years old. If Plaintiffs' names are known, the media will thrust the names of Plaintiffs into the public eye, and then Plaintiffs and their nine-year-old child will have their innermost personal information completely exposed, which will then be accessible through the web indefinitely, including as their child ages and develops. Thus, there exists a substantial probability that the overriding privacy interest will be prejudiced if the record is not sealed.

### 4.    The Proposed Sealing is Narrowly Tailored.

Plaintiffs are only requesting that the Motion to Proceed as Anonymous Plaintiffs, and any future filings that include the Plaintiffs' names, or any information that would identify the Plaintiffs or their child, be sealed. The Plaintiffs filed a publicly accessible complaint on April 18, 2016, in which the Plaintiffs only sought to maintain their own personal privacy by filing as "JANE DOE 1" and "JANE DOE 2." The Plaintiffs are not seeking to hide any information about the case from the public, and the Plaintiffs have revealed their own identities to the Court and the Defendants. Therefore, this request is narrowly tailored.

### 5.    No Less Restrictive Means Exist to Achieve the Overriding Interest.

Plaintiffs, by seeking to proceed as "JANE DOE 1" and "JANE DOE 2," have attempted to use the least restrictive means possible to protect their interests. By proceeding in this manner, the pleadings do not need to be sealed and the public can have access to the documents wherein Plaintiffs are named "JANE DOE 1" and "JANE DOE 2." Plaintiffs cannot proceed as "JANE DOE 1" and "JANE DOE 2" without Court approval, and, therefore, must identify themselves to the Court for that motion. Therefore, that motion, its supporting documents, and the Order must be sealed. Lastly, the transcript of this proceeding and any

9

proceeding related to the Motion to Proceed as Anonymous Plaintiffs must be ordered sealed, or it defeats the entire purpose of sealing the motions.

**B.    PLAINTIFFS HAVE COMPLIED WITH THE FILING REQUIREMENTS OF RULES 2.550 AND 2.551.**

In compliance with Rule 2.551, Plaintiffs have filed the materials to be lodged under seal in a manila envelope that is properly labeled "CONDITIONALLY UNDER SEAL." Plaintiffs have also placed the proper cover sheet on the manila envelope, included the public redacted versions to be filed, and all of the documents required by Rule 2.551(b)(1).

**IV.    CONCLUSION.**

Plaintiffs and the Court have an overriding interest in ensuring that Plaintiffs' identities are not are revealed. The case involves matters that are of a highly personal and sensitive nature, and given the media's interest in the case, it is possible that the privacy of Plaintiffs, and that of their young child, will be severely undermined if Plaintiffs' identities are exposed. Plaintiffs request that this Court order the Motion to Proceed as Anonymous Plaintiffs "JANE DOE 1" and "JANE DOE 2", the documents submitted in support thereof and transcript from this hearing, as well as any documents which contain Plaintiffs' identities or their identifying information, be filed under seal.

DATED: May 13, 2016

> HERSH & HERSH
> A Professional Corporation
>
> _____
> NANCY HERSH
> Attorneys for Plaintiffs

10

NANCY HERSH, State Bar No. 49091
KATE HERSH-BOYLE, State Bar No. 278864
BRENDAN GANNON, State Bar No. 303410
HERSH & HERSH
A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102-6396
(415) 441-5544

Attorneys for Plaintiffs
JANE DOE 1 & JANE DOE 2

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JANE DOE 1 & JANE DOE 2, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>XYTEX CORPORATION, a Georgia Corporation; XYTEX CRYO INTERNATIONAL LTD., a Georgia Corporation; MARY HARTLEY, an individual; J. TODD SPRADLIN, an individual; and DOES 1-25, inclusive,<br><br>Defendants. | Case No.: CGC-16-551538<br><br>**REDACTED DECLARATION OF NANCY HERSH IN SUPPORT OF PLAINTIFFS' MOTION TO SEAL PORTIONS OF THE COURT'S RECORD**<br><br>**Reservation No.: 04260613-04**<br><br>Date: June 13, 2016<br>Time: 9:30 a.m.<br>Dept.: 302<br>Trial Date: None Set<br><br>Complaint filed: April 18, 2016 |

I, NANCY HERSH, declare:

1.     I am an attorney licensed to practice before all Courts of the State of California and am a partner in the law firm of Hersh & Hersh, located at 601 Van Ness Avenue, Suite 2080, San Francisco, California, attorneys for Plaintiffs herein.

1

DECLARATION OF NANCY HERSH IN SUPPORT OF MOTION TO SEAL PORTIONS OF THE COURT'S RECORD

2.      The matters referred to in this declaration are based upon my personal knowledge,
except where otherwise indicated and, if called as a witness, I could and would testify
competently thereto.

3.      I make this declaration in support of Plaintiffs' Motion to Seal Portions of the
Court's Record.

4.      Plaintiffs "JANE DOE 1" and "JANE DOE 2" ████████████████████████
████████ wish to proceed in this action anonymously due to the intimate privacy issues raised by
this action. I am informed and believe that the media has been very interested in this case
because it involves issues of artificial insemination, sperm donation, corporate business
practices, mental illness, and even criminal charges like burglary. The subject matter of the case
is subject to media attention, and media sensationalism, and Plaintiffs therefore want to protect
their privacy, and their child's privacy.

5.      Defendants in this action and their attorneys of record are all aware of the true
identities of Plaintiffs herein, and, therefore, would not be prejudiced by an order permitting
Plaintiffs to pursue this action anonymously, nor by an order sealing the Motion to Proceed
Anonymously and any documents containing information that would identify Plaintiffs or lead to
the discovery of their identities.

///

///

///

///

///

///

2

6.      Plaintiffs have filed concurrently herewith a Motion to Proceed as Anonymous Plaintiffs and filed a Declaration of Nancy Hersh in support of that Motion, which attaches a true and correct copy of the Complaint as Exhibit A thereto.

I declare under penalty of perjury that the foregoing is true and correct and if called as a witness I could and would completely testify thereto.

Executed on May 13, 2016, at San Francisco, California.


NANCY HERSH

3

1  NANCY HERSH, State Bar No. 49091
   KATE HERSH-BOYLE, State Bar No. 278864
2  BRENDAN GANNON, State Bar No. 303410
3  HERSH & HERSH
   A Professional Corporation
4  601 Van Ness Avenue, Suite 2080
   San Francisco, CA 94102-6396
5  (415) 441-5544
6
   Attorneys for Plaintiffs
7  JANE DOE 1 & JANE DOE 2
8
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                IN AND FOR THE COUNTY OF SAN FRANCISCO
10
11 JANE DOE 1 & JANE DOE 2, individuals,    )  Case No.: CGC-16-551538
                                            )
12               Plaintiffs,                )
                                            )  REDACTED [PROPOSED] ORDER ON
13 vs.                                      )  MOTION TO SEAL PORTIONS OF THE
                                            )  COURT'S
14                                          )  RECORD
                                            )
15 XYTEX CORPORATION, a Georgia             )  Reservation No.: 04260613-04
   Corporation; XYTEX CRYO                  )
16 INTERNATIONAL LTD., a Georgia            )  Date: June 13, 2016
   Corporation; MARY HARTLEY, an           )  Time: 9:30 a.m.
17 individual; J. TODD SPRADLIN, an         )  Dept.: 302
   individual; and DOES 1-25, inclusive,    )  Trial Date: None Set
18                                          )
19               Defendants.                )  Complaint filed: April 18, 2016
                                            )
20                                          )
                                            )
21 _____
22      The Plaintiffs, "JANE DOE 1" and "JANE DOE 2" ████████████████████████

23 ████, filed a motion to seal portions of the court's record that came on for hearing on June 13,

24 2016, in Department 302 of the above-entitled Court.

25      The Court having heard and considered the arguments of counsel and considered all of

26 the pleadings, papers and records on file herein, and

27

28

                                           1
                                 _____
                    [PROPOSED] ORDER ON MOTION TO SEAL PORTIONS OF THE COURT'S RECORD

GOOD CAUSE APPEARING THEREFOR

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs' Motion to Seal Portions of the Court's Record is GRANTED. In so making the order, the Court expressly finds that due to the sensitive nature of the facts giving rise to this action:

(1)     There exists an overriding interest that overcomes the right of public access to the record;

(2)     The overriding interest supports sealing the record to protect the identities of both Plaintiffs;

(3)     A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed, because the identities of the Plaintiffs would be accessible to all persons;

(4)     The proposed sealing is narrowly tailored because it only seeks to prevent disclosure of the Plaintiffs' identities, by sealing the Motion to Proceed Anonymously as "JANE DOE 1" and "JANE DOE 2" Plaintiffs, and its supporting papers and Order, and any hearing transcript or record from these motions and any identifying information; and

(5)     No less restrictive means exist to achieve the overriding interest because there is no other way to prevent disclosure of Plaintiffs' identities.

No person other than the Court is authorized to inspect the sealed record. (California Rules of Court Rule 2.551(e)(3)).

Plaintiffs' Motion to Proceed Anonymously As "JANE DOE" And "JOHN DOE" Plaintiffs, the Notice of Motion, Memorandum of Points and Authorities, and Declaration of

1    Nancy Hersh are hereby ordered sealed.  A redacted copy is to remain on file.  (California Rules

2    of Court Rule 2.551(e)(1).)  The Order need not be placed under seal as it does not contain

3    information protected by this Order.

4            Any documents filed, or to be filed in the future, that contain the Plaintiffs' identities or

5    identifying information are hereby ordered sealed.  A redacted copy of any such document is to

6    remain in the public file.  (California Rules of Court Rule 2.551(e)(2)).

7            THIS ORDER IS ORDERED UNDER SEAL, AS IT CONTAINS INFORMATION

8    THAT IS SUBJECT TO SEAL.

9            These documents may not be unsealed, except as Ordered by the Court, in compliance

10   with California Rules of Court Rule 2.551(e)(4).

11           The Clerk of Court is hereby directed to comply with California Rule of Court Rule

12   2.551(e)(1) by replacing the cover sheet indicating that the documents are "CONDITIONALLY

13   UNDER SEAL" with a file-endorsed cover sheet prominently labeled" "SEALED BY ORDER

14   OF THE COURT ON [DATE THIS ORDER IS SIGNED]."

15

16           IT IS SO ORDERED

17

18   DATED: _____, ___, 2016

19

20                                                                  _____

21                                                                  JUDGE OF THE SUPERIOR COURT

[PROPOSED] ORDER ON MOTION TO SEAL PORTIONS OF THE COURT'S RECORD

1  NANCY HERSH, State Bar No. 49091
2  KATE HERSH-BOYLE, State Bar No. 278864
   BRENDAN GANNON, State Bar No. 303410
3  HERSH & HERSH
   A Professional Corporation
4  601 Van Ness Avenue, Suite 2080
   San Francisco, CA 94102-6396
5  (415) 441-5544

6
   Attorneys for Plaintiffs
7  JANE DOE 1 & JANE DOE 2

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9             IN AND FOR THE COUNTY OF SAN FRANCISCO

10

11  JANE DOE 1 & JANE DOE 2, individuals,    )   Case No.: CGC-16-551538
                                             )
12              Plaintiffs,                  )   **REDACTED [PROPOSED] ORDER ON**
                                             )   **MOTION TO PROCEED**
13                                           )   **ANONYMOUSLY AS "JANE DOE 1"**
   vs.                                       )   **AND "JANE DOE 2" PLAINTIFFS**
14                                           )
                                             )   **Reservation No.: 04260613-03**
15  XYTEX CORPORATION, a Georgia             )
   Corporation; XYTEX CRYO                   )   Date: June 13, 2016
16  INTERNATIONAL LTD., a Georgia            )   Time: 9:30 a.m.
   Corporation; MARY HARTLEY, an             )   Dept.: 302
17  individual; J. TODD SPRADLIN, an         )   Trial Date: None Set
   individual; and DOES 1-25, inclusive,     )
18                                           )   Complaint filed: April 18, 2016
                                             )
19              Defendants.                  )
                                             )
20                                           )

21

22       Plaintiffs "JANE DOE 1" and "JANE DOE 2" ███████████████████

23  filed a Motion to Proceed Anonymously as "JANE DOE 1" and "JANE DOE 2" that came on for

24  hearing on June 13, 2016 in Department 302 of the above-entitled Court.

25       The Court having heard and considered the arguments of counsel and considered all of

26  the pleadings, papers and records on file herein, and

27

28

                                           1
─────────────────────────────────────────────────────────────
ORDER ON MOTION TO PROCEED ANONYMOUSLY AS "JANE DOE 1" AND "JANE DOE 2" PLAINTIFFS

GOOD CAUSE APPEARING THEREFOR

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs' Motion to Proceed Anonymously as "JANE DOE 1" and "JANE DOE 2" is GRANTED.  Plaintiffs shall hereafter be referred to only as "JANE DOE 1" and "JANE DOE 2."

THIS ORDER IDENTIFYING THE PLAINTIFFS SHALL REMAIN SEALED.

IT IS SO ORDERED.


DATED: _____, ___, 2016


_____

JUDGE OF THE SUPERIOR COURT

ORDER ON MOTION TO PROCEED ANONYMOUSLY AS "JANE DOE 1" AND "JANE DOE 2" PLAINTIFFS