IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE 1 and JANE DOE 2,<br><br>Plaintiffs,<br><br>v.<br><br>XYTEX CORPORATION, a Georgia Corporation, XYTEX CRYO INTERNATIONAL, LTD., a Georgia Corporation, MARY HARTLEY, an individual, J. TODD SPRADLIN, an individual, and DOES 1–25, inclusive,<br><br>Defendants. | No. C 16-02935 WHA<br><br>**ORDER HOLDING IN ABEYANCE DEFENDANTS' MOTION TO TRANSFER** |

## INTRODUCTION

In this product-liability action involving the sale of human semen for artificial insemination, one defendant moves to transfer the action based on a forum-selection clause. For the reasons stated below, the motion is **HELD IN ABEYANCE**, pending limited discovery regarding the appearance of defendant's website at the time in question and plaintiffs' actual knowledge of the forum-selection clause.

## STATEMENT

Plaintiffs Jane Doe 1 and Jane Doe 2, a same-sex couple, are San Francisco residents. In 2004, they registered to use xytex.com, a website operated by defendant Xytex Corporation. Xytex, through its website, sold human semen for use in artificial insemination.

1    Xytex Corporation posted a written "Site Usage and Information Agreement" on its
2    website. That agreement could be accessed from xytex.com by first pulling down a menu
3    labeled "About Us" on the main toolbar of the website and then selecting the "Site Usage"
4    button that appeared in that menu. The "About Us" menu appeared second in a toolbar of six
5    menus, including "Home," "Patient Section," "Physicians Info," "Become a Donor," and "XTS:
6    Xytex Tissue Services." The toolbar appeared in the same location on every page of the site
7    (Scholer Reply Decl. ¶¶ 2–3).

An image of the website as it appeared at the time in question is reproduced below[1]:



---

[1] Plaintiffs filed a screenshot of xytex.com as it appeared at the time they filed their briefs herein (Gannon Decl., Exh. A). Xytex counters that the website looked different in 2004. In support of its reply, Xytex provided a screenshot of xytex.com/index.shtml as it appeared in 2004 as archived on the Internet Archive's Wayback Machine, supported by the declaration of Xytex's president (Scholer Reply Decl., Exh. A). The screenshot submitted, however, was *not* of xytex.com, and it did not demonstrate the menu in which the "Site Usage" link appeared. Additionally, the image included a vertical line through the middle of the page that appears to be an artifact of improper scanning. The image reproduced in this order is a screenshot of the Wayback Machine's entry for xytex.com in December 2004, retrieved by the Court on July 11, 2016. Our court of appeals has not addressed whether pages from the Wayback Machine are proper for judicial notice, and our record offers no indication of the accuracy of the Wayback Machine's records, so this order does *not* take judicial notice of the records for the Wayback Machine. Nevertheless, this order assumes, solely for the sake of argument, that Xytex's website appeared as represented herein in 2004. As discussed in greater detail below, both sides will have the opportunity to take jurisdictional discovery to establish whether the website, in fact, appeared as represented in this order.

1   The following is an image of the "About Us" pull-down menu:



Users could browse the website, register for the site, and purchase Xytex's services without reading or affirmatively consenting to the terms of the agreement. Section I of the agreement provided, in pertinent part (Scholer Decl., Exh. B) (emphasis in original):

> I. **IMPORTANT! THIS IS A BINDING LEGAL AGREEMENT** (this "Agreement"). **PLEASE READ THESE TERMS AND CONDITIONS OF USE CAREFULLY BEFORE USING THIS SITE.**
>
> The Agreement governs your use of this site (collectively, the "Site") and is by and between Xytex Corporation (referred to herein as "Xytex", "we", "us", or "our") and you, on behalf of yourself and the buyer, member or supplier for which your have registered ("you"). By using, viewing, transmitting, caching, storing and/or otherwise using the Site, the services or functions offered in or by the Site and/or the contents of the Site in any way, you have agreed to each and all of the terms and conditions set forth below, and waive any right to claim ambiguity or error in this Agreement. If you do not agree to each and all of these terms and conditions please do not use the Site and leave the Site immediately.

Section XV included a choice-of-law and forum-selection provision, as follows:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, without giving effect to any principles of conflicts of law. You agree that any action at law or in equity arising out of or relating to the terms of this Agreement shall be filed only in the state or federal courts located in Richmond County, Georgia and you hereby consent and submit to the personal jurisdiction of such courts for the purposes of litigating any such action.

After registering, plaintiffs reviewed the profiles of the sperm donors listed on Xytex's website and selected Donor #9623, whose profile stated he held a bachelor's degree, a master's degree, and that he had been working toward a Ph.D. in artificial intelligence and neuroscience engineering. Jane Doe 1 underwent an artificial insemination procedure using sperm from

Donor #9623. Approximately nine months later, Jane Doe 1 gave birth to a child, P.S., who is now nine years old. Plaintiffs stored the remaining sample in case they decided to have a second child.[2]

In April 2015, plaintiffs read an article that described a lawsuit brought against Xytex involving Donor #9623. The lawsuit claimed that he had been diagnosed with schizophrenia, that he had dropped out of college, that he had pled guilty to residential burglary, and that Xytex had done nothing to investigate the veracity of the information the donor had submitted for his profile. Plaintiffs investigated the claims in that lawsuit.

Plaintiffs commenced this action in San Francisco Superior Court in April 2016 bringing claims for: (i) fraud, (ii) negligent misrepresentation, (iii) strict products liability, (iv) negligent products liability, (v) breach of express warranty, (vi) breach of implied warranty of merchantability, (vii) battery, (viii) negligence, (ix) specific performance, (x) false advertising, (xi) violation of California's Unfair Competition Law, and (xii) wrongful birth. Defendants removed the case to federal court here in San Francisco on the basis of declaratory judgment. Xytex now moves to transfer the case to the Southern District of Georgia based on the forum-selection clause in the agreement on its website.[3]

**ANALYSIS**

Xytex Corporation contends that this action must be transferred to the Southern District of Georgia on the basis of a forum-selection clause in the written "Site Usage and Information Agreement" that it purports applied to use of its website in December 2004, when plaintiffs registered to use the site and purchased Donor #9623's sperm. Plaintiffs counter that the language containing the forum-selection clause appeared in an unenforceable "browsewrap

---

[2] The specific dates of the artificial insemination procedure and P.S.'s birth, which have no bearing on the instant motion, are not stated in the complaint.

[3] Defendant Xytex Cryo International Ltd. is the parent company of Xytex Corporation, and defendants Mary Hartley and J. Todd Spradlin are employees of Xytex Corporation. Xytex Cryo, Hartley, and Spradlin all moved to dismiss claims against them for lack of personal jurisdiction and joined in the instant motion. They withdrew their motion to dismiss and the parties stipulated to their dismissal. Xytex Corporation is the only remaining defendant.

4

agreement" to which plaintiffs never manifested their assent as required by *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014).

In *Nguyen*, the plaintiff purchased two computer tablets on the defendant's website during a clearance sale and received an email confirmation. The following day, he received an email cancelling the order due to unexpectedly high demand. The plaintiff brought a putative class action alleging deceptive business practices and false advertising. The defendant moved to compel arbitration based on an arbitration clause in the terms of use of its website.

The defendant made its terms of use available via a hyperlink labeled "Terms of Use" at the bottom left-hand corner of every page on its website alongside other hyperlinks labeled "NOOK [another of the defendant's products] Store Terms," "Copyright," and "Privacy Policy." The hyperlinks appeared underlined and set in a green typeface. The defendant contended that the "Terms of Use" hyperlink placed the plaintiff on constructive notice of the arbitration agreement and that the plaintiff's continued use of the site bound him to the terms of that agreement.

Our court of appeals adopted the Second Circuit's view that an inconspicuous browsewrap agreement never required the user to expressly manifest consent to the terms of use, and such "[m]utual manifestation of assent, whether by written or spoken word or by conduct is the touchstone of contract." *Id.* at 1175 (quoting *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 29 (2d Cir. 2002) (applying California law)). Thus, where "there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Id.* at 1177.[4]

The "Terms of Use" link in *Nguyen* was too inconspicuous to place the plaintiff on actual notice:

> Where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any

---

[4] The Terms of Use in *Nguyen* included a choice-of-law provision selecting New York law. Rather than engage in a circular choice-of-law analysis, the *Nguyen* court considered the result under both California law and New York law, which dictated the same results. *Id.* at 1175.

5

>   affirmative action to demonstrate assent, even close proximity of
>   the hyperlink to relevant buttons users must click on — without
>   more — is insufficient to give rise to constructive notice.

*Id.* at 1179.

Perhaps acknowledging the clear analog between our case and *Nguyen*, Xytex makes no attempt to distinguish the design of its website and the website at issue there. Indeed, Xytex placed the link to its site-usage agreement *even more inconspicuously* than the defendant in *Nguyen* had, inasmuch as the link on xytex.com could only be accessed *after* a user pulled down an additional menu, which menu itself had no indication of the nature of the contract hidden within. Moreover, a consumer is even less likely to understand the contractual nature of a page concerning "Site Usage" than one concerning "Terms of Use."

Rather than engage with *Nguyen*, Xytex argues that *Nguyen* and the authority on which it relied all related to arbitration agreements, which required a "mutual manifestation of assent," while a forum-selection clause is presumptively valid so long as it is fundamentally fair. *See Carinval Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

Xytex's argument is misguided. *Nguyen* was not so limited. It adopted the language in *Specht* stating that "mutual assent . . . is the touchstone of contract." *Id.* at 1175. It did not limit the requirement of mutual assent to arbitration agreements. Moreover, Xytex's argument regarding the presumptive validity of the forum-selection clause begs the question of the validity of the agreement containing it.

The California Court of Appeal roundly rejected Xytex's arguments in *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855 (2016), which neither side herein addressed in their briefs although it predated the instant motion by more than three months. There, the defendant sought to enforce an arbitration agreement and a forum-selection clause in a browsewrap agreement. The hyperlink to the agreement was placed at the bottom of each page in all-caps in a light green typeface on the website's lime green background among fourteen other hyperlinks of the same format.

The defendant in *Long* cast *Nguyen* as an outlier case and suggested that a link to a browsewrap agreement could place a user on constructive notice of the agreement as long as it

was visible on the page without scrolling. The California Court of Appeal rejected that argument, and aligned with *Nguyen* noting:

> [W]ithout notifying consumers that the linked page contains binding contractual terms, the phrase "terms of use" may have no meaning or a different meaning to a large segment of the Internet-using public. In other words, a conspicuous "terms of use" hyperlink may not be enough to alert a reasonably prudent Internet consumer to click the hyperlink.

*Id.* at 867. It went on to hold:

> [The defendant's] reliance on the presumptive validity of forum selection clauses *in otherwise enforceable contracts* proves too much. Contrary to [the defendant's] implicit premise, the presumption of validity is not a substitute for proof of the resisting party's objective manifestation of assent to the larger contract. If it were, a party would establish the existence of a binding contract simply by showing that the contract contained a presumptively valid forum selection clause — an obviously absurd result.

*Id.* at 868 (emphasis in original).[5]

Relying on the assumption that the website looked as represented herein in 2004, this order would hold that the Xytex failed to give plaintiffs constructive notice that the "Site Usage" button included a hyperlink to the terms of a contract that supplied the terms for use of Xytex's website and services. Nevertheless, the record is inadequate to establish whether the site, in fact, appeared as set forth above. At oral argument, counsel for plaintiffs specifically asked for leave to take a Rule 30(b)(6) deposition regarding Xytex's position on the appearance of the website in 2004. Plaintiffs shall be permitted to take two four-hour depositions and to propound up to eight requests for the production of documents directed solely at that question. As discussed below, Xytex shall also be permitted to depose both plaintiffs and request the production of documents. That discovery may address this issue as well as the issue of actual notice. (The burden is on Xytex to prove up the existence of the agreement to select a forum.)

---

[5] Xytex absurdly argues *Nguyen* is an outlier, inasmuch as it addressed the enforceability of a browsewrap agreement in the "early days" of Internet commerce — 2004. *Nguyen* did not so limit itself, and *Long* applied *Nguyen* to Internet commerce that occurred in 2013.

7

### 2. ACTUAL NOTICE.

Although, as stated, it appears that Xytex placed the hyperlink to the site-usage agreement too inconspicuously to give constructive notice, the agreement (and the forum-selection clause therein) may yet possibly be enforceable if our plaintiffs had actual knowledge of the agreement. The only evidence in our record indicating plaintiffs' lack of actual knowledge is the declaration of Attorney Brendan Gannon, counsel for plaintiffs, in which he avers "[p]laintiffs did not have knowledge of the existence of the forum selection clause on the website for Defendant Xytex Corporation when they purchased human sperm for the purpose of artificial insemination" (Gannon Decl. ¶ 6). Attorney Gannon's statement lacks foundation, and, in any case, would be insufficient to overcome Xytex's reasonable request for limited discovery on this issue.

In its reply brief, Xytex requests leave to conduct discovery regarding the extent to which plaintiffs had actual notice of the Site Usage and Information Agreement. Xytex shall be permitted to propound up to eight requests for the production of documents and to take a four-hour deposition of each plaintiff on the issue of actual knowledge of the site-usage agreement and the forum-selection clause therein prior to purchasing Donor #9623's sperm (two depositions total). As stated, this discovery may also address the issue of plaintiffs' recollection of the appearance of the website in 2004.

### CONCLUSION

For the reasons stated above, Xytex's motion to dismiss is **HELD IN ABEYANCE** pending discovery into the issue of plaintiffs' actual knowledge of the existence of the site-usage agreement that contained the forum-selection clause at issue herein and the actual format of Xytex's website at the time in question. All discovery on these issues shall be completed by **AUGUST 11**.

8

By **AUGUST 25**, Xytex shall submit a brief addressing evidence of plaintiffs' actual knowledge of the site-usage agreement and the forum-selection clause therein, and plaintiffs shall submit a brief addressing evidence of the format of the website in 2004. The briefs shall **NOT EXCEED FIFTEEN PAGES**. Each side shall respond within **FOURTEEN CALENDAR DAYS** of the filing of the other's brief. Upon review of the briefs, the Court will determine whether a further hearing is necessary.

**IT IS SO ORDERED.**

Dated: July 19, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE