IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE 1 and JANE DOE 2,<br><br>Plaintiffs,<br><br>v.<br><br>XYTEX CORPORATION, a Georgia Corporation, XYTEX CRYO INTERNATIONAL, LTD., a Georgia Corporation, MARY HARTLEY, an individual, J. TODD SPRADLIN, an individual, and DOES 1–25, inclusive,<br><br>Defendants. | No. C 16-02935 WHA<br><br>**FINDINGS OF FACT AFTER EVIDENTIARY HEARING AND ORDER DENYING DEFENDANTS' MOTION TO TRANSFER AND GRANTING IN PART AND DENYING IN PART STAY OF DISCOVERY** |

**INTRODUCTION**

In this product-liability action involving the sale of human semen for artificial insemination, one defendant moved to enforce a forum-selection clause in the usage agreement on its website. An order rejected defendant's argument that they had provided reasonable notice of the usage agreement but allowed discovery into whether plaintiffs had actual notice of the agreement. The parties' briefs following that discovery revealed inappropriate conduct at the deposition of one of the plaintiffs by counsel for both sides, so the Court held an evidentiary hearing to complete the testimony then invited supplemental briefing.

After the evidentiary hearing, while the supplemental briefing proceeded, defendant brought this motion to stay discovery pending review of its petition to consolidate this action with several others in multi-district litigation.

To the extent stated below, defendants' motion to transfer is **DENIED**, and their motion to stay discovery is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Plaintiffs Jane Doe 1 and Jane Doe 2, a same-sex couple, are San Francisco residents. In 2004, they registered to use xytex.com, a website operated by defendant Xytex Corporation. Xytex, through its website, sold human semen for use in artificial insemination.

Xytex Corporation posted a written "Site Usage and Information Agreement" on its website. That agreement could be accessed from xytex.com by first pulling down a menu labeled "About Us" on the main toolbar of the website, then selecting the "Site Usage" button that appeared in that menu. The "About Us" menu appeared second in a toolbar of six menus, including "Home," "Patient Section," "Physicians Info," "Become a Donor," and "XTS: Xytex Tissue Services." The toolbar appeared in the same location on every page of the site.

An image of the front page of the website as it appeared at the time in question is reproduced below (Gannon Decl., Exh. B at *002):



2

The following is an image of the "About Us" pull-down menu (Gannon Decl., Exh. C at 1):



Users could browse the website and register for and purchase Xytex's services without regarding or affirmatively consenting to the terms of the agreement. Users of Xytex's website and services purportedly assented to the terms of the site-usage agreement simply by "using, viewing, transmitting, caching, storing and/or otherwise using the Site, the services or functions offered in or by the Site and/or the contents of the Site in any way . . ." (Scholer Decl., Exh. B., Section I).

Section XV of the agreement included a choice-of-law and forum-selection provision, as follows:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, without giving effect to any principles of conflicts of law. You agree that any action at law or in equity arising out of or relating to the terms of this Agreement shall be filed only in the state or federal courts located in Richmond County, Georgia and you hereby consent and submit to the personal jurisdiction of such courts for the purposes of litigating any such action.

The "Patient Section" of Xytex's website included a "Frequently Asked Questions" page. One response on that page directed patients to "access [Xytex's] website and thoroughly review [its] services" (*ibid.*).

After registering, plaintiffs reviewed the profiles of the sperm donors listed on Xytex's website and selected Donor #9623, whose profile stated he held a bachelor's degree, a maser's degree, and that he had been working toward a Ph.D. Jane Doe 1 underwent an artificial insemination procedure using sperm from Donor #9623 in approximately 2005 and gave birth to a child, P.S., who is now nine years old.

1    In April 2015, plaintiffs read an article that described a lawsuit against Xytex involving
2 Donor #9623, which lawsuit claimed that the donor's profile was false and included material
3 omissions regarding the donor's education, mental health, and criminal history.  In April 2016,
4 plaintiffs commenced this action alleging that Xytex breached various duties and contractual
5 obligations by failing to verify the information in Donor #9623's profile.

6    Xytex moved to transfer the action to the Southern District of Georgia based on the
7 forum-selection clause in the agreement on its website.  An order held that Xytex had not given
8 reasonable notice of the agreement so the forum-selection clause within it could only be
9 enforceable if plaintiffs had actual notice of the agreement.  The record on Xytex's motion did
10 not adequately address that question, so the parties were invited to conduct discovery on that
11 issue (as well as the actual appearance of the website in 2004).  Specifically, the order allowed
12 Xytex to conduct four-hour depositions of each plaintiff.

13    Xytex deposed both plaintiffs.  All agree that Doe 2 did not have actual knowledge of
14 the site-usage agreement on Xytex's website, because she deferred to Doe 1's decisions
15 regarding the website.  At Doe 1's initial out-of-court deposition, counsel for Xytex spent
16 approximately one hour laying foundation regarding Doe 1's usage of Xytex's website, in the
17 hope of implying actual knowledge of the site-usage agreement.

18    Throughout the deposition, plaintiffs' counsel made speaking objections, advancing
19 their interpretation of the scope of discovery allowed by the order.  Specifically, plaintiffs'
20 counsel the contended the deposition could only directly address Doe 1's actual knowledge of
21 the site-usage agreement.  Plainly, plaintiffs' counsel were incorrect — Xytex was entitled to
22 lay foundation regarding Doe 1's broader experience on the Xytex website to trigger her
23 memory, establish a basis from which one could infer she had knowledge of the site-usage
24 agreement, or develop impeachment material.

25    Plaintiffs' counsel's objections came to a head when they said, on the record and in the
26 presence of the witness, "just ask her if she ever saw the site usage agreement and she will say
27 no, she never saw the site usage agreement" (Doe 1 Dep. at 5–6).  This constituted witness

4

coaching and interfered with defense counsel's attempt to go behind an obviously lawyer-prepared narrative.

For their part, counsel for defendant ambushed Doe 1 with questions about a 2015 site-usage agreement, although order directed the deposition of Doe 1 "on the issue of actual knowledge of the site-usage agreement and the forum-selection clause therein prior to purchasing" the sperm from Xytex and on "the appearance of the website in 2004" (Dkt. No. 27 at 8). Xytex had never mentioned the 2015 agreement in its motion to transfer.

Doe 1 testified that she could not recall which parts of the Xytex website she specifically read but that she had *not* viewed the site-usage agreement (Doe 1 Dep. at 120–39).

In light of the foregoing, defendants asked for an opportunity to conduct a second deposition or for an inference that Doe 1 had actual knowledge of the site-usage agreement. Instead, an order set an evidentiary hearing at which defendants could conduct direct examination of both plaintiffs with the judge presiding (Dkt. No. 40). Both sides behaved at the evidentiary hearing.

Xytex only called Doe 1 to testify at the evidentiary hearing. She testified that she visited Xytex's website on the recommendation of a friend and in part because she wanted the donor to remain anonymous and separate from the parent-child relationship (as compared to a sperm donation from a friend, who would likely remain a part of the child's life). Doe 1 browsed the website primarily with the goal of finding a donor that matched her criteria, but she also sought information about how long Xytex had been in business, its process for screening for diseases, *inter alia* (Doe 1 Dep. at 10, 33).

Doe 1 acknowledged she did not know where the information she sought would be located on Xytex's website when she first visited. She testified that she focused on the "Patient Section" of the website and expected she could find the answers she needed, since she was a patient. She perused the Frequently Asked Questions page within that section, but could not recall reading the response directing her to thoroughly review Xytex's services (Doe 1 Dep. at 22, 30–35).

5

The parties submitted supplemental briefs following the evidentiary hearing with argument about the evidence from the deposition and the testimony at the hearing. Although the briefing schedule invited the parties to reply to the other's supplemental brief, neither did so.

\*                              \*                              \*

In September, Xytex separately moved to transfer this action and five others for coordinated or consolidated pretrial proceedings before the Judicial Panel on Multidistrict Litigation. The hearing on the motion before the JPML is scheduled for December 1. Xytex now moves to stay discovery in this action pending the decision by the JPML. Fact discovery in this action closes on July 31, 2017.

This order follows full briefing, an evidentiary hearing, and supplemental briefing on the motion to transfer and full briefing on the motion to stay.

**ANALYSIS**

**1.    MOTION TO TRANSFER.**

Xytex seeks to enforce the forum-selection clause in its site-usage agreement and to transfer this action to the District of Georgia. Notwithstanding the choice-of-law provision in the agreement, both sides apply California law, not Georgia law, to the question of whether any agreement was ever formed.

"[W]here there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). A prior order held that Xytex's website failed to put a reasonably prudent user on inquiry notice of the terms of its site-usage agreement. Thus, the only question is whether our plaintiffs had actual knowledge of the agreement. It is Xytex's burden to prove knowledge of the the agreement. *Ibid*.

Xytex argues that Doe 1's testimony at her deposition and at the evidentiary hearing demonstrate that she had actual knowledge of the site-usage agreement. Specifically, it argues that she browsed Xytex's website with the goal of finding answers to numerous questions (in

6

addition to her primary goal of finding a donor), and she did not know where those answers resided on the website. Thus, Xytex argues, she must have become aware of the site-usage agreement as she became acquainted with the layout of the website. Nevertheless, Doe 1 testified, as she did at her deposition, that she sought answers via the "Patient Section" of the website. Nothing in Doe 1's testimony, however, suggested she ever viewed or learned of the site-usage agreement.

Xytex argues that "Doe 1 had constructive notice of the Site Usage agreement, because she had to have looked at the primary header tabs" (Def.'s Supp. Br. at 4). But the primary header tabs included no indication whatsoever of an agreement that purported to govern Doe 1's usage of Xytex's website and services. Xytex further argues, "the only way for Doe 1 to obtain answers about Xytex experience, warranties, background and primary contact information required her to see the Site Usage tab" (*ibid*.). But that is mere attorney argument. Nothing in the record supports the contention that Doe 1 could *only* have obtained contact information about Xytex by browsing the site in a manner that displayed the Site Usage menu option nested within the About Us option. In fact, certain contact information was available on the Frequently Asked Questions page and the Payment Options page, both located in the Patient Section (Gannon Decl., Exh. B at *041, *052). In any case, the label "Site Usage" did not adequately indicate the contractual nature of the page to which it linked — it simply indicated that it linked to information about how to use Xytex's website. Thus, even if Doe 1 saw the menu beneath the "About Us" primary tab and the "Site Usage" menu option, that would do nothing to establish her knowledge of the site-usage *agreement*.

Xytex alternatively argues that plaintiffs' counsel's speaking objections and outright coaching at Doe 1's deposition warrant the inference that Doe 1's testimony would otherwise have indicated that she *did* have actual knowledge of the site-usage agreement. This argument has more traction. In light, however, defendants' counsel's questioning outside the scope of the designated subject of the deposition, and in light of the evidentiary hearing on the issue of actual notice of the 2004 site-usage agreement, the Court was able to assess Doe 1's credibility and to ensure that her testimony was not improperly influenced by her counsel. This procedure

7

1  gave defendants a full and fair opportunity to develop their record.  No further remedy is
2  warranted.
3     Finally, Xytex argues that Doe 1's lack of memory about the agreement must be due to
4  the fact that its terms were immaterial to her decision, rather than the fact that Doe in fact never
5  had actual notice of the agreement.  That is mere attorney argument.  There is simply *nothing* in
6  the record from which to infer that Doe 1 ever browsed the About Us tab, much less viewed the
7  page behind the Site Usage menu option.  Defendants' hypothetical explanation for Doe 1's
8  lack of memory cannot make up for the lack of basis to infer that she ever knew the facts
9  purportedly forgotten.
10    This order finds that neither Doe 1 nor Doe 2 had actual knowledge of the 2004 site-
11 usage agreement.  Xytex's motion to transfer is therefore **DENIED**.

### 2. MOTION TO STAY DISCOVERY.

13    Xytex also moves to stay discovery pending a decision by the JPML on Xytex's petition
14 to consolidate this action in an MDL with five other actions proceeding across the country.  It
15 argues that a stay is warranted pursuant to the Court's inherent power to "control the disposition
16 of the causes on its docket with economy of time and effort for itself, for counsel and for
17 litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *see also Clinton v. Jones*, 520
18 U.S. 681, 707 (1997).
19    A complete stay of discovery is not warranted.  We are still in the early stages of
20 discovery, and the only discovery taken so far pertained to Xytex's motion to transfer.  The
21 Court is sympathetic to the possibility that discovery in this case may ultimately be duplicated
22 in the consolidated proceedings should an MDL be instituted, but there remains considerable
23 discovery unique to our plaintiffs that will *not* be duplicated in any MDL proceedings.  The
24 work has to be done at some point, and it might as well be now.
25    Out of deference to the JPML, however this order postpones any discovery relating only
26 to Donor #9623 and how Xytex processed his donor information until after the JPML decision
27 or December 30, 2016, whichever comes first.  However, plaintiffs may propound ten simple

8

interrogatories on any subject (no subparts) and there shall be no stay as to answering them. Otherwise, discovery may go forward on all other subjects.

## CONCLUSION

Defendants' motion to transfer is **DENIED**, and their motion to stay discovery is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

Dated: December 1, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE