IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE 1 and JANE DOE 2;<br><br>    Plaintiffs,<br><br>  v.<br><br>XYTEX CORPORATION, a Georgia Corporation;<br><br>    Defendant.<br>   / | No. C 16-02935 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

### INTRODUCTION

In this wrongful-birth action involving the sale of human semen for artificial insemination, one defendant moves to dismiss. For the foregoing reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### STATEMENT

**1.    JANE DOE ONE & JANE DOE TWO.**

Plaintiffs Jane Doe One and Jane Doe Two, a same-sex couple, resided and continue to reside in San Francisco. In 2004, they registered to use xytex.com, a website operated by defendant Xytex Corporation. Xytex, through its website, sold human semen for use in artificial insemination. At the time, Xytex's website declared that it is "an industry leader in reproductive services with a commitment to unsurpassed quality controls," and that the donors' personal health and family history are carefully screened through a comprehensive medical process

1  developed by the Centers for Disease Control and Prevention. Additionally, the website
2  proclaimed that Xytex's "FDA-mandated screening and testing also ensures our donors'
3  continued good health." It further represented that the screening process was so thorough
4  that a mere "1 percent of the men that inquire about being a donor candidate are evaluated,"
5  and, ultimately, "[f]ewer than 5 percent of the candidates become donors" (Compl. ¶¶ 2, 17).

Our plaintiffs heard about Xytex through friends and visited Xytex's website. Plaintiffs were impressed by the aforementioned screening procedures described on the website. From looking at the website, plaintiffs got the impression that Xytex seemed to be the sperm bank with the most rigorous qualification standards. Plaintiffs reached out to Xytex and spoke with Mary Hartley, a Xytex representative. They asked her if she knew of any Xytex sperm donors that had a particularly impressive health and education history. Hartley immediately singled out a specific sperm donor, Donor #9623, and stated that although Xytex has not yet published his profile on their website, his sperm had already been used to successfully inseminate women and it would be sold out as soon as his profile was published. Hartley also claimed that Donor #9623 was "ultra intelligent" and that he looked "like a model." "Moments after" the phone conversation, Jane Doe One and Jane Doe Two purchased sperm from Donor #9623 (*id*. ¶¶ 30–31).

After Xytex sent the sperm to San Francisco, licensed independent medical professionals introduced sperm from Donor #9623 into plaintiff Jane Doe One in an artificial insemination procedure. Approximately nine months later, Jane Doe One gave birth to P.S. At the time of the complaint, P.S. was nine years old (*id*. ¶ 33).

Nine years passed.

In April 2015, Jane Doe One and Jane Doe Two saw an article on the website for the Associated Press that discussed a lawsuit that had been filed against Xytex, specifically referencing to Donor #9623. The article revealed that their sperm donor, Xytex Donor #9623, was a mentally ill schizophrenic felon, who had pled guilty to residential burglary. Plaintiffs

learned that Donor #9623 had dropped out of college and held no degrees whatsoever. They also discovered that Xytex had altered Donor #9623's photos, removing a large facial mole (*id.* ¶ 34).

Subsequently to plaintiffs' discovery of Donor #9623's medical and criminal history, Jane Doe One sent an email to Ronda Drake, an agent of Xytex and expressed her concern regarding the fact that Donor #9623 was a diagnosed schizophrenic. In response, Drake said that she was not aware "of any reported medical issues," related to Donor #9623. Additionally, Jane Doe One received an email from J. Todd Spradlin, the Chief Medical and Laboratory Director for Xytex, in which Dr. Spradlin said that he had "received no information to confirm that Donor #9623 has schizophrenia." Spradlin also said, in the same email, that it "would be irresponsible of Xytex to notify clients of unsubstantiated claims" (*id.* ¶¶ 35–36).

### 2. XYTEX AND DONOR #9623.

Donor #9623 first came to the Xytex office in late 2000. At that time, he worked as a janitor/waiter, who had dropped out of school. Prior to selling his sperm to Xytex, Donor #9623 had been hospitalized, as an adult, for mental health reasons on at least two separate occasions. During these hospitalizations, which sometimes lasted for more than two weeks, the medical staff of two different hospitals diagnosed Donor #9623 with psychotic schizophrenia, narcisstic personality disorder, and significant grandiose delusions (*id.* ¶¶ 21–22).

Xytex's "rigorous qualification procedure" included filling out a questionnaire on his first visit and undergoing a ten-minute physical examination, in which the examining physician did not discuss Donor #9623's physical or mental health history. Donor #9623 told Hartley that he thought his IQ was about 130, but Hartley "suggested to him that he was a genius with an IQ of about 160." Hartley further told him that the more educated donors did well selling their sperm, and that Xytex usually dealt with donors with higher education. Two weeks after the initial visit in 2000, Donor #9623 won approval to be a Xytex sperm donor (*id.* ¶¶ 22–23).

While Xytex represented Donor #9623 as a healthy, intelligent, and highly educated sperm donor, he underwent hospitalization for mental health problems and got arrested on numerous occasions for burglary, trespassing, DUI, and disorderly conduct. In 2002, Donor #9623 was found to be disabled for his schizophrenia and placed on full Social Security

3

Disability (*id.* ¶ 24). Xytex alleged that it had no knowledge of either Donor #9623's medical or criminal record.

Recently, Jane Doe One and Jane Doe Two have come to discover that "their child needs counseling." Additionally, Jane Doe One and Jane Doe Two have each attended conferences regarding best practices "for parents in their situation," suffered stress and worry, and been required to, and will be required to, expend funds to evaluate and care for their child to ensure that should she become schizophrenic, she will have the best care possible (*id.* ¶ 37).

*          *          *

In April 2016, plaintiffs filed their complaint in San Francisco County Superior Court. Plaintiffs alleged claims for intentional misrepresentation, negligent misrepresentation, strict products liability, products liability based on negligence, breach of express warranty, breach of implied warranty of merchantability, battery, negligence, false advertising, wrongful birth, specific performance, punitive damages, and violations of the California Unfair Competition law.

The action was removed to federal court here in San Francisco on June 1, 2016, based on diversity jurisdiction (Dkt. No. 1). One defendant moved to enforce a forum-selection clause in the usage agreement on its website (Dkt. No. 11). An order rejected defendant's argument that they had provided reasonable notice of the usage agreement but allowed discovery into whether plaintiffs had actual notice of the agreement (Dkt. No. 27). The parties' briefs following that discovery revealed inappropriate conduct at the deposition of one of the plaintiffs by counsel for both sides, so the Court held an evidentiary hearing to complete the testimony, then invited supplemental briefing (Dkt. No. 45). After the evidentiary hearing, while the supplemental briefing proceeded, defendant brought a motion to stay discovery pending review of its petition to consolidate this action with several others in multi-district litigation which was granted in part (Dkt. No. 60). The Judicial Panel on Multidistrict Litigation decided not to institute a multidistrict litigation and the partial stay was lifted (Dkt. No. 69). Now Xytex moves to dismiss. This order follows full briefing and oral argument.

**ANALYSIS**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the conduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).

California recognizes the tort of "wrongful birth." *Turpin v. Sortini*, 31 Cal. 3d 220 (1982). The essence of the tort is negligence by a professional service provider leading to a problematic birth. Before addressing the challenge to the wrongful birth claim for relief, however, this order will address the challenge to plaintiffs' intentional and negligent misrepresentation claims. Finally, the order will address the remaining challenges.[*]

1. **INTENTIONAL/NEGLIGENT MISREPRESENTATION.**

Plaintiffs claim Xytex intentionally or negligently misrepresented the specific characteristics of Donor #9623, such as his level of education, and his medical and criminal record. The elements of a claim for intentional misrepresentation are: (1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, *i.e.*, scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages. The same elements comprise a claim for negligent misrepresentation, except there is no requirement of scienter or intent to induce reliance. *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003). Under Rule 9(b),

---

[*] Xytex agrees to apply California law in adjudicating this motion. The site-usage agreement on Xytex's website included a choice-of-law provision selecting Georgia as governing the relationship between Xytex and its users. A prior order held our plaintiffs had no notice of the site-usage agreement. Accordingly, Xytex concedes that California law applies, at least for the sake of this motion (Dkt. No. 74 at 6 n.1).

5

1  plaintiff alleging fraud must satisfy a heightened pleading standard that requires circumstances
2  constituting fraud be pled with particularity. Specifically, "[t]he pleadings must state precisely
3  the time, place, and nature of the misleading statements, misrepresentations, and specific acts of
4  fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994). The pleading must be "specific
5  enough to give defendants notice of the particular misconduct . . . so that they can defend against
6  the charge and not just deny that they have done something wrong." *Vess v. Ciba-Geigy Corp.*
7  *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The requirement for pleading scienter is less
8  rigorous than that which applies to allegations regarding the "circumstances that constitute
9  fraud" because the Rule 9(b) requirement states that "malice, intent, knowledge, and other
10 conditions of a person's mind may be alleged generally."

11  In its briefs, Xytex argues that plaintiffs' misrepresentation claims fail because damages,
12 causation, intent, and scienter are not specifically alleged. At oral argument, counsel for Xytex
13 repeatedly stated that our plaintiffs testified and that this Court found that they had "never
14 [seen] the website," in an apparent argument made to sow doubt that our plaintiffs relied on
15 the allegedly misleading statements thereon. Xytex's characterization of plaintiffs' testimony
16 and the Court's finding is so inaccurate that it should be addressed. At the evidentiary hearing
17 regarding the forum-selection clause, Jane Doe One testified, *inter alia*, that she recalled the
18 website had "a lot of information directed towards patient[s] in the Patient section that answered
19 questions like what do you screen your donors for" (Jane Doe One Dep. at 26). The order
20 denying Xytex's motion to transfer found, "nothing in Doe One's testimony, however, suggested
21 she ever viewed or learned of the site-usage agreement" and that "there [was] simply *nothing*
22 in the record from which to infer that Doe One ever browsed the About Us tab" (Dkt. No. 66 at
23 7–8) (emphasis added). Nothing in our record supports defense counsel's groundless assertion
24 that our plaintiffs "never saw the website." Xytex counsel went on to add that "Buyer Beware"
25 should apply, but plaintiffs had no way to conduct due diligence on Donor #9623 whose true
26 identity was hidden from plaintiffs by Xytex. Only Xytex knew his true identity and was able
27 to conduct any diligence.
28

6

### A. Damages.

Xytex contends that plaintiffs have not alleged that they suffered any actual damages because of the alleged misrepresentations concerning Donor #9623 inasmuch as the birth of plaintiffs' child alone does not warrant general damages. *Turpin*, 31 Cal. 3d 220 at 235 ("[I]t is simply impossible to determine in any rational or reasoned fashion whether [a child] has in fact suffered an injury in being born impaired rather than not being born . . . ."). Nevertheless, special damages are available.

Plaintiffs' complaint does not claim damages due to their child's life, but rather due to the medical expenses and emotional distress upon discovery of Donor #9623's medical history. Plaintiffs argue that as parents, they "may recover special damages for extraordinary expenses necessary to treat [their child's] hereditary ailment." *Turpin*, 31 Cal. 3d 220 at 239 (alteration in original).

Xytex would distinguish *Turpin*. In *Turpin*, the court allowed for recovery of medical expenses associated with an hereditary ailment of a child who had been conceived only after medical care providers failed to diagnose such condition in an older sibling. Xytex contends that the special damages in *Turpin* were "both certain and readily measurable" inasmuch as the plaintiffs' child actually suffered from the hereditary deafness — unlike our plaintiffs' child — who has not yet been diagnosed with schizophrenia. (Again, *Turpin* is the decision recognizing the tort of wrongful birth.)

Plaintiffs respond that it is not necessary to prove that plaintiffs' child already is schizophrenic to recover medical costs because "medical monitoring may be called for as a result of a defendant's tortious conduct, even in the absence of actual physical injury." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal 4th 965, 1007 (1993).

Xytex contends *Potter* is distinguishable because *Potter* held that "there can be no recovery for preventative medical care and checkups to which members of the public at large should prudently submit." *Potter,* 6 Cal. 4th 965 at 1009. At this stage, one can reasonably infer that monitoring plaintiffs' child for mental illnesses, after discovering that the child's paternal genes carry the hereditary disease of schizophrenia, rises above preventative medical

7

1 care to which members of the public at large should submit themselves to, but rather originates
2 from the child's genetic predisposition.  Plaintiffs, therefore, have sufficiently alleged damages
3 caused by Xytex's misrepresentations.  This order recognizes that *Turpin* was a negligence-
4 based decision rather than a misrepresentation-based decision.  Nevertheless, this order holds
5 that at a minimum the type of damages recognized in *Turpin* would also be recoverable under a
6 misrepresentation theory.

### B. Causation.

Xytex contends that plaintiffs have failed to allege a causal link between the alleged torts and the injury as damages alleged may only be recovered when "it becomes more likely than not that the injury was a result of its action." *Simmons*, 212 Cal. App. 3d 696 at 702.  In *Simmons*, the plaintiff brought a wrongful birth and life action based on the alleged negligence of plaintiff's physician in failing to provide a test that might have disclosed the risk of her child being born with Down's Syndrome in time to abort the pregnancy.  The court found the defendants physician and clinic did not proximately cause the harm, since there was only a twenty percent chance the test would have detected the risk of Down's Syndrome.  *Id.* at 702. *Simmons* is distinguishable because it arose on summary judgment, not at the pleading stage, as here.

Plaintiffs, therefore, have alleged sufficient facts to demonstrate proximate cause. Moreover, plaintiffs have sufficiently alleged all elements for negligent misrepresentation. Xytex's motion to dismiss plaintiffs' negligent misrepresentation claim fails.

The final two elements, intent to induce, and scienter, relate only to plaintiffs' intentional misrepresentation claim, to which this order now turns.

### C. Intent to Induce Reliance.

Xytex's contends that plaintiffs failed to make allegations that Xytex intended to deceive plaintiffs.  The complaint, however, alleges that when plaintiffs asked Hartley if she knew of any Xytex sperm donors that had a particularly impressive health history, Hartley immediately singled out Donor #9623, creating the reasonable inference that Xytex intended to induce reliance on its misrepresentation that Donor #9623 was healthy.

8

Plaintiffs, therefore, have sufficiently alleged Xytex's intent to induce reliance on the alleged misrepresentations.

### D. Scienter.

In order to satisfy the requirement of scienter, it must be established either that defendant had actual knowledge of the untruth of his statements, or that he lacked an honest belief in their truth, or that the statements were carelessly and recklessly made, in a manner not warranted by the information available to defendant. *Watt v. Patterson*, 125 Cal. App. 2d 788, 792 (1954).

Xytex argues that while plaintiffs allege that Donor #9623 made false claims about himself, they do not allege that Xytex knew about these misrepresentations. Plaintiffs contend that active knowledge is not necessary since Xytex made the false representations with recklessness and disregard for their truth. The information regarding Donor #9623's medical health history, as well as his criminal record could have easily been discovered "through publicly accessible, indisputable, medical and professional documents," especially in light of Xytex's proclamation of its "intense and arduous" qualification process that "generat[es] a lot of medical, psychological, genetic, and social information" (Compl. ¶ 19(g), 22). If Xytex had screened Donor #9623 as carefully as Xytex claimed to screen donors, then Donor #9623 would not have been held out to be a model man and likely would have been rejected. Xytex surely knew that it failed to screen up to the standard it advertised. This alone would show reckless disregard and therefore is adequate to show that Xytex acted with scienter.

Plaintiffs' allegations have sufficient particularity as to the time, the nature, and the specific acts to meet the requirements of Rule 9(b). Therefore, plaintiffs' allegation of intentional misrepresentation has been sufficiently plead, and thus survives the motion to dismiss.

### 2. NEGLIGENCE/STRICT PRODUCTS LIABILITY.

A plaintiff may seek recovery in a products liability case either on the theory of strict liability in tort or on the theory of negligence. Under either theory, to recover from a manufacturer, a plaintiff must prove that a defective product caused the injury. *Marrell v. Navegar, Inc.*, 26 Cal. 4th 465, 478 (2001).

Plaintiffs' strict products liability claim alleges that defendant either "manufactured" or "distributed" the allegedly "defective and unsafe" sperm. Xytex contends that the claim for strict liability is barred by a tissue bank's statutory immunity to strict products liability under Section 1635.2 of the Health and Safety Code. Section 1635.2 states (emphasis added) that "the . . . distribution of *tissue* for the purpose of *transplantation* . . . shall be deemed a service by those persons engaged in these activities" and that the aforementioned acts therefore "shall not be subject to the requirements of Division 2 of the Commercial Code."

Xytex supports its claim for statutory immunity by citing *Cryolife, Inc. v. Superior Court*, 110 Cal. App. 4th 1145 (2003), where the court held that "by expressly excluding the application of Division 2 of the Commercial Code to the sale, storage, or distribution of tissue for the purpose of transplantation," the legislature implicitly excluded such tissue-related activities from the application of the doctrine of strict products liability. *Cryolife, Inc*., 110 Cal. App. 4th 1145 at 1154. Xytex, therefore, argues that as a service provider of tissue it is exempt from strict products liability.

Plaintiffs do not dispute this point, but correctly contend that *Cryolife* did not discuss or deal with a claim for products liability based on negligence, such as a failure to warn of risks from the use of sperm from Donor #9623 that Xytex knew or should have known. A tissue bank's statutory immunity from strict products liability therefore does not extend to products liability based on negligence. Plaintiffs' strict products liability claim is dismissed. As to this, leave to amend will not be granted inasmuch as it is foreclosed as a matter of law. Plaintiffs' negligence claim survives at this stage.

### 3. BREACH OF WARRANTIES.

Plaintiffs allege that Xytex created express and implied warranties regarding the "quality and reliability" of the sperm sold to plaintiffs. An express warranty may be created: By "affirmation of fact or promise," "description of the goods," or "sample or model." Cal. Com. Code § 2313. Moreover, "a warranty that the *goods* shall be merchantable is implied in a contract for their sale." Cal. Com. Code § 2314(1) (emphasis added).

Xytex rightly points out that Section 2313 of the Commercial Code is part of Division Two, which is, as establish above, inapplicable to tissue-related activities. *See* Cal. Health & Safety Code § 1635.2; *Cryolife, Inc.*, 110 Cal. App. 4th 1145 at 1154.

While plaintiffs seem to implicitly concede to Xytex's argument, plaintiffs switch gears in their reply and contend that "while the terminology of express and implied warranties may be found in the California Commercial Code, such terminology does not limit the legal basis for a claim for relief at this stage." Plaintiffs argue that even if Xytex's representations and warranties are not enforceable as an express contract, plaintiffs have alleged sufficient facts to recover on a theory of promissory estoppel. This order declines to evaluate on a claim for promissory estoppel, as plaintiffs failed to allege this claim in their complaint. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1203 (N.D. Cal. 2014) (Judge Lucy Koh); *Swartz v. KPMG LLP*, 476 F. 3d 756, 763 (9th Cir. 2007). The claim for breach of warranties is dismissed. As to this claim, leave to amend will not be granted inasmuch as it too is foreclosed as a matter of law.

### 4. BATTERY.

Plaintiffs allege that Xytex committed a battery by causing Jane Doe One to be inseminated with the sperm of a person to whom she did not consent to (Compl. ¶ 79). In the medical context, "battery is an intentional tort that occurs when a doctor performs a procedure without obtaining any consent." *Conte v. Girard Orthopaedic Surgeons Medical Group, Inc.*, 107 Cal. App. 4th 1260, 1266 (2003). There are three elements to a claim for medical battery under a violation of conditional consent: (1) The patient must show his consent was conditional, (2) the doctor intentionally violated the condition while providing treatment, and (3) the patient suffered harm as a result of the doctor's violation of the condition. *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1497–98 (2004).

As to the first element, plaintiffs claim that their consent to the artificial insemination of Jane Doe One was conditioned on using the sperm of a healthy and intelligent donor. Next, plaintiffs contend that Xytex violated said condition because Jane Doe One was inseminated with sperm from a mentally-ill felon, and that thereby the insemination constitutes battery. This argument is flawed. The only procedure alleged in the complaint was the artificial

11

insemination performed on Jane Doe One by "licensed medical professionals" unaffiliated with Xytex. Despite Xytex's misrepresentations regarding Donor #9623, Xytex never committed an intentional or offensive touching of Jane Doe One.

Plaintiffs attempt to argue that "[o]ne who causes an offensive touching to occur is liable for the offense, even if an innocent third party was the conduit." *People v. Austin*, 111 Cal. App. 3d 110, 1140 (1980). California law has not extended the tort of medical battery to third-party misconduct. Plaintiffs' claim for medical battery is dismissed.

### 5. NEGLIGENCE/PRODUCTS LIABILITY BASED ON NEGLIGENCE/WRONGFUL BIRTH.

Plaintiffs contend that Xytex "acted carelessly and negligently" in providing sperm, thereby causing plaintiffs' injuries. Plaintiffs' claim for negligence is repetitive of their products liability claim based on negligence, as well as their wrongful birth claim as wrongful birth is one form of a professional negligence action. *Turpin*, 31 Cal. 3d 220 at 229. The sole element at issue here is that of recoverable damages. Pursuant to the antecedent discussion of special damages, plaintiffs have sufficiently claimed that Xytex's tortious actions caused the alleged damages. Xytex's motion to dismiss the negligence, products liability based on negligence, and wrongful birth claim therefore fails.

### 6. SPECIFIC PERFORMANCE.

Plaintiffs seek specific performance to compel Xytex to honor the contract term that obliges Xytex to disseminate information regarding Donor #9623 as discussed by Xytex. To obtain specific performance after a breach of contract, a plaintiff must generally show: (1) The inadequacy of his legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract. *Real Estate Analytics, LLC v. Vallas*, 160 Cal. App. 4th 463, 472 (2008). Only the fourth element is contested.

Xytex contends that plaintiffs failed to allege sufficiently definite contract terms for the court to enforce and that it is unclear what information it should disclose since plaintiffs are already aware of the information they argue should be disclosed.

Plaintiffs, however, demand full disclosure of information Xytex might receive in the future concerning Donor #9623, and for now we must leave the remedy of specific performance on the table among potential relief.

### 7. FALSE ADVERTISEMENT/UNFAIR COMPETITION.

Plaintiffs contend that by promoting misleading information about the nature, characteristics, and qualities of Donor #9623, Xytex engaged in unfair business practices and false advertising. Unfair competition includes "any unlawful, unfair or fraudulent business act or practice . . . and any act prohibited by the false advertising law." Cal. Bus. & Prof. Code § 17200. Advertising that "is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" is prohibited. Cal. Bus. & Prof. Code § 17500.

*First*, Xytex contends that this claim should fail because plaintiffs fail to allege that Xytex knew about the misrepresentations. As discussed above, a reasonable inference from plaintiffs' allegations is that Xytex acted recklessly regarding its misrepresentations.

*Second*, Xytex contends that the claim should be dismissed since plaintiffs are unable to allege any facts showing the amount of restitution necessary to restore purchasers to the status quo ante. *See* Cal. Bus. & Prof. Code § 17535. Xytex cites *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 697 (2006), where the failure to support the restitution amount with evidence led to the dismissal of the unfair competition claim. *Colgan* is not on point. Unlike the case before us, which is at the pleading stage, *Colgan* was on appeal from a restitution order after trial. Plaintiffs' claim for false advertisement and unfair business practices has been sufficiently alleged.

### 8. PUNITIVE DAMAGES.

Plaintiffs seek punitive damages. Xytex contends that under Section 425.13 of the Code of Civil Procedure, plaintiffs are required to file a motion to amend before they can seek punitive

damages. Plaintiffs argue that Section 425.13 is a procedural state statute and therefore does not apply in federal court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Plaintiffs cite *Jackson v. E. Bay Hosp.*, 980 F. Supp. 1341, 1352 (N.D. Cal. 1997) (Judge Marilyn Patel), where the court found that Section 425.13 was a method of managing the pleadings and was not "so intimately bound up" with the substantive law of torts that it had to be applied. As *Jackson* is on point and persuasive, unlike Xytex's arguments, plaintiffs' claim for punitive damages survives for now.

**CONCLUSION**

For the foregoing reasons the motion to dismiss is **GRANTED IN PART** as to plaintiffs' claims for strict products liability, breach of warranties, and battery. The motion to dismiss is **DENIED IN PART** as to plaintiffs' claims for intentional and negligent misrepresentation, negligence, products liability based on negligence, wrongful birth, false advertising, unfair business practices, specific performance, and punitive damages. Plaintiffs may seek leave to amend the dismissed claims, except as to strict products liability and breach of warranties, by a formal motion noticed on the normal 35-day calendar by **APRIL 6 AT NOON**. Plaintiffs must plead their best case. Their motion should affirmatively demonstrate how the proposed first amended complaint corrects the deficiencies identified in this order, as well as any others raised in Xytex's motion but not addressed herein. The motion should be accompanied by a redlined copy. Failure to timely file a motion seeking leave to amend will result in dismissal of the action against plaintiffs. Xytex must raise any Rule 12 issues in response to plaintiffs' motion. This case will go to trial in November and both sides must pursue discovery in time to be ready for the trial date and please do not use any excuse of co-ordinated discovery as a basis for delaying depositions or other discovery.

**IT IS SO ORDERED.**

Dated: March 24, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14